Merrimack, }
May 5, 1936. }

EMILY G. MOORE, *Adm'x*

*v.*

RUMFORD PRINTING COMPANY.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the defendant.

WOODBURY, J.   The defendant's bill of exceptions raises the question of the sufficiency of the evidence to warrant the finding that the decedent's "death was due to carbon monoxide contracted into his system by the intermittent inhalation of unconsumed illuminating gas for a period of about two hours while working at the defendant's plant" on the night of June 15, 1932, and also the question of whether the court was correct in ruling that his death "was caused by or resulted from an accidental injury arising out of and in the course of his employment."

Three questions are therefore presented.   First, was there any evidence from which it could be found that unconsumed illuminating gas, in sufficient quantity to affect a human being, was present in the decedent's work-place during the early evening of June 15, 1932? Second, if there was, did it in fact cause or contribute to cause, the heart condition from which the decedent later died?   And, third, was the plaintiff's injury "accidental" within the meaning of the employers' liability and workmen's compensation act as construed in *Guay* v. *Company*, 83 N. H. 392?   In order to sustain the award of compensation all these questions must be answered in the affirmative.

The only evidence concerning the events of the evening of June 15, 1932, came from one Boland who was the decedent's assistant.   He testified that about half an hour after commencing work he smelled gas about the press and that the gas bar was not functioning properly. His actual words were: "All I can say is, sometimes I saw it work and sometimes I saw it didn't work at all and sometimes half of it worked."   He also testified that occasionally even the pilot light went out and he saw the decedent "take a match and light the gas."

The above testimony substantiates the findings of the court to the effect that unconsumed gas was present near the place where the decedent was at work on the night of June 15, 1932, and that this gas escaped from the printing press being operated by him.   The defendant seeks to limit the effect of this testimony by pointing out that

on cross-examination the same witness also testified that on that night the machine was operating just as it and similar presses always operated when running at only two thirds of normal speed, that there was no more gas about the press that night than usual under similar circumstances, that there was no sudden or unusual burst of escaping gas, that presses frequently had to be operated at the speed at which that press was being operated during the night in question, and that, in his experience of some seven or eight years, he had never known or heard of any other person suffering any ill effects from that normal concentration of gas.

This testimony does not conclusively establish that the decedent was not injuriously affected by the gas; it is only persuasive on that issue. The question is not whether it would affect the ordinary man but whether it affected the decedent. See *Chiuchiolo* v. *Company*, 84 N. H. 329, 332; *Musgrave* v. *Company*, 86 N. H. 375.

On the other hand, there is persuasive evidence that the gas did, in fact, adversely affect the decedent. There was testimony that some persons are more susceptible to gas poisoning than others, that the decedent went to work in his usual state of health and returned home in a semi-conscious condition, complaining of extreme pain, and giving off "some foreign odor like something medical or gas or something." There was also the testimony of the attending physician that his first diagnosis was poisoning of some sort, and that on the following day when the decedent was able to give a medical history he diagnosed the poisoning as due to the inhalation of illuminating gas.

Furthermore, on the night in question, the printed sheets were not falling from the press properly and the decedent stood continuously in close proximity to the left hand end of the gas bar for the purpose of "jogging" the sheets into place. Since the left hand end of the bar flamed even more irregularly than the other, this may well have subjected the decedent to a greater concentration of gas for a longer period of time than that to which pressmen are generally subjected.

The testimony of the defendant's expert witness, a gas engineer, that tests of the atmosphere made some two years later indicated no injurious quantity of gas near the left hand end of the gas bar does not require acceptance by the trier of the facts. *Clark* v. *Railroad*, 87 N. H. 36.

We are of the opinion that there is evidence to support the finding that the decedent suffered from gas poisoning on the night of June 15, 1932.

There is also evidence to support the finding that this gas poisoning caused the degenerative heart condition from which the decedent later died. The attending physician so testified in response to a hypothetical question. Objection was made and exception taken to the allowance of this question on the ground that the facts stated therein had not been proved. This exception is without merit but does not require consideration because another doctor called by the plaintiff testified to the same effect in response to another hypothetical question to which no objection was made.

It follows that there is evidence that the decedent's collapse and subsequent death arose out of the employment. That the gas escaped and his breakdown occurred in the course of the employment is not open to doubt. The remaining question is whether these events can be appropriately called accidental?

In *Guay* v. *Company*, 83 N. H. 392, it was decided, first, that compensation may only be had for an accidental injury; and second, that the accidental feature may consist either of cause or effect. Obviously the same definition of the word "accidental" is to be used whether that word is applied to cause or effect, and in the case at bar both cause and effect were coëxtensive in time.

The defendant argues that in the case at bar neither cause nor effect can be denominated accidental because it is not possible to give them a sufficiently definite location in time. In support of this position much reliance is placed upon *Thomson* v. *Company*, 86 N. H. 436, but that case is not in point. It was there decided that an injury suffered as a result of the daily breathing in of gas over the whole period of employment, about nine months, was not an accidental one. No similar finding appears in the instant case, nor is any such finding compelled by the evidence. Here the court has found that the pertinent events occurred during a two hour period on the evening of June 15, 1932, and, as pointed out above, there is evidence to support this finding. In popular speech an event so localized, if otherwise within the definition of that word, would certainly be called an accident, and the test of ordinary popular usage is the one to be applied in defining it. *Eaton* v. *Proctor*, 85 N. H. 398, 399, and cases cited.

Furthermore, the recent case of *Zwiercan* v. *Company*, 87 N. H. 196, establishes that the decedent in the case at bar met with an accidental injury. In that case the employee suffered an attack of heat prostration which manifested itself over a period of one day. This attack, it was held, "was an accident within the statute." Authori-

ties elsewhere, in so far as they have come to our attention, are in accord with this view. See *Columbine Laundry Co.* v. *Commission*, 73 Colo. 397; *Beck* v. *Company*, 260 Mich. 550; *Matthiessen &c. Co.* v. *Industrial Board*, 284 Ill. 378; *Gerst* v. *Company*, 107 Pa. Sup. 30; and *Sullivan Mining Co.* v. *Aschenbach*, 33 Fed. (2d) 1, in which many leading authorities are carefully considered.

*Exceptions overruled.*

All concurred.