## 𝔖taunton

MILDRED LEE DERBY, ET ALS. V. SWIFT AND COMPANY,
EMPLOYER, ET AL.

September 8, 1948.

Record No. 3382.

Present, All the Justices.

*Cocke, Cole & Ridley*, for the appellants.

*Leon T. Seawell* and *L. T. Seawell, Jr.*, for the appellees.

GREGORY, J., delivered the opinion of the court.

Mildred Lee Derby, widow, and William Lile Derby and Mildred Page Derby, children of William Carson Derby, deceased, made application to the Industrial Commission for compensation on account of the death of William Carson Derby, claiming that it resulted from an accident arising out of and in the course of his employment with Swift and Company of Hampton. While at work, Derby, who will be hereinafter referred to as the employee, suffered a hernia, and later had an operation to remove it. He died eleven days after the operation from an embolus occluding the main branch of the pulmonary artery. This is sometimes referred to as "pulmonary embolism."

The case was defended on the ground that there was no accident arising out of and in the course of the employment, and on the further ground that there was no causal relationship between the repair of the hernia by radical operation and the pulmonary embolus which caused death.

The commission found in favor of the claimants on the second ground and there is evidence to support that finding—that is, that there was causal relationship between the operation for the hernia and the embolus which caused death. However, the hearing commissioner denied compensation for the reason that it found that the employee had suffered no accident.

Later the case was heard by the full commission and it affirmed the finding of the hearing commissioner and dismissed the claim.

The employee had been in the employ of Swift and Company at Hampton for some fourteen months prior to the date of his death and had been engaged as a truck driver ice cream salesman. His duties, in part, consisted of helping to load a delivery truck with packages of ice cream from a metal table, on which they were placed for the purpose of being counted and assorted before loading them into the truck. This table weighed 100 pounds and sometimes it became necessary to move it into position so that the ice cream could be more readily loaded into the truck.

The employee, prior to the accident, which occurred on January 29, 1947, had been in good health, having suffered no serious illness nor an operation of any kind. Prior to his employment by Swift and Company he was given a physical examination by the company's physician and at that time, according to the testimony of the physician, there was no evidence of any hernia.

When the employee reached home on the evening of January 29, 1947, he immediately went to bed and told his wife that he had ruptured himself that morning while lifting a loading table at the plant. He also told her that at the time he lifted the loading table he felt "something pull loose" in his left side. When he returned to his work the following morning he reported the occurrence to the superintendent of the company and a report of accident was made out by the superintendent. The employee also told his co-workers that he had hurt his side by lifting the loading table. He continued working each day but was somewhat incapacitated

and had to be provided with a helper on the truck. On February 10, 1947, Swift and Company, through its superintendent, sent the employee to the physician of the company for an examination. The physician found that the employee had a left indirect inguinal hernia and advised an operation. The physician testified that hernias are sometimes caused by lifting or straining and that he had no doubt in his mind but that the hernia in this case was caused by a strain. He based his conclusion upon the history of the case given by the patient.

On March 7, the employee was operated on for the hernia at a hospital in Hampton. He stood the operation well and his convalescence was normal until March 18, eleven days after the operation. On that date he was preparing to leave the hospital for home when he was suddenly taken ill and died in a few minutes.

The operating surgeon testified that the employee gave a history in which he stated that on January 29, while lifting a loading table, he felt a stinging pain in his side. The surgeon also testified that the hernia was a small one and of recent origin, and that hernias may be caused by lifting or straining. He stated that an operation for hernia would predispose a patient to embolism. This question was asked the surgeon, "Would an operation such as that for hernia or any other operation predispose a patient to embolism?", and he replied, "Yes, sir, it can."

The hospital chart, which contained the personal history of the case, had the following inscribed thereon, "About two weeks ago, while working at Swift Ice Cream he lifted one end of a loading table and at that time realized a pain in lower left abdomen. Pain rather sharp but subsided in a few minutes and he returned to work." It then shows he was found to have a left inguinal hernia and that he would either have to have surgical repair or wear a truss and that he chose to have surgical repair. Under "Pre-operative diagnosis" on the chart the surgeon wrote, "Left inguinal hernia, traumatic." And he also wrote, under the heading entitled,

"Post-operative diagnosis", the same words, to-wit: "Left inguinal hernia, traumatic."

A post mortem was performed upon the body of the deceased and it disclosed the cause of death to have been pulmonary embolism.

The insurance carrier in this case paid all of the medical expense incurred by the employee, including the hospital bills and the physicians' charges.

Upon this evidence the hearing commissioner found that there was no accident and denied compensation. In his opinion, he stated this: "We infer, from the medical history of the case, the normal tension on the muscles of the abdomen in the performance of his customary duties as an employee, caused the gradual relaxation of the inner inguinal ring. This continued to the date of the alleged accident when there was sufficient relaxation for the omentum to enter the inguinal canal. This condition prevails in most hernia cases and is due to inherent physical weakness of the tissues independent of traumatic influences. The record as a whole in this case shows the additional tearing of the inner ring to have been coincidental with what the claimant was doing rather than to have been produced by an accident."

We have scanned the record with great care and are unable to find that this statement is sufficiently supported by the evidence or by any reasonable inference that could be drawn therefrom. The full commission, speaking through Commissioner Martin, had this to say: "It having been determined that the death of the employee was due to a pulmonary embolus which was an outgrowth of the herniotomy, the only issue remaining is whether or not the hernia was the result of an accident, as it must be to be compensable. Section 2(e) of the Workmen's Compensation Act. On this question Commissioner Nickels was careful to point out that, accepting in its entirety claimant's evidence, there was no suggestion of an unforeseen or fortuitous circumstance in moving the table, such as a fall or a slip or other mishap. But it should also be noted that there was nothing unusual about moving the table by

lifting one end of it to pull it around. The only witness whose job was the same as that of the deceased, H. G. Hayes, a driver-salesman, testified that in order to get the loading table over to the back of his truck he 'usually moved one end or pulled it around' just as the deceased apparently was doing.

"Thus from the evidence it is reasonably clear that not only was there no fall, slip, or other fortuitous circumstance, but the moving of the comparatively light table itself, in order to place it in the proper position, was a customary practice in loading the truck. Counsel for claimant in oral argument conceded that the moving of the table by the deceased was not an unusual event. From the evidence presented one can only conclude that the deceased felt the 'pulling sensation' while he was doing his regular work in the manner in which he was accustomed to do it. The evidence discloses nothing that by any stretching of the doctrine of liberal construction could be said to constitute an accident."

From what has been written there is only one question for decision. As we have seen, the commission has determined upon sufficient evidence that the death of the employe was due to a pulmonary embolus which was the result of an operation for hernia. That removes the question of causal connection from the case.

Hearsay evidence is admissible under the Workmen's Compensation Act and is used as the basis of an award. *American Furniture Co.* v. *Graves*, 141 Va. 1, 126 S. E. 213, and *Humphrees* v. *Boxley Bros. Co.*, 146 Va. 91, 135 S. E. 890, 49 A. L. R. 1427. The commission accepted it in this case as it had the right to do.

The evidence shows that the employee strained or exerted himself in lifting or moving the loading table and felt a stinging pain in his left side and felt that something had pulled loose. There was a sudden, unusual and unexpected rupture of the abdominal wall which produced the hernia. The fact that he did not slip or fall does not prevent the circumstance from being an accident. Mr. Justice (now

Chief Justice) Hudgins, in *Big Jack Overall Co.* v. *Bray*, 161 Va. 446, 171 S. E. 686, defined an accident within the purview of the workmen's compensation law in this language: "The definition of accident generally assented to is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens. Where the effect was not the natural and probable consequence of the means employed, and was not intended or designed, the injury resulting was produced by accidental means."

This definition of an accident was approved in *Hall's Bakery* v. *Kendrick*, 176 Va. 346, 11 S. E. (2d) 582.

The Virginia hernia statute, Code, sec. 1887(2)(e) provides in part: "In all claims for compensation for hernia resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proved to the satisfaction of the 'industrial commission',

"First: That there was an injury resulting in hernia;

"Second: That the hernia appeared suddenly;

"Third: That it was accompanied by pain;

"Fourth: That the hernia immediately followed an accident;

"Fifth: That the hernia did not exist prior to the accident for which compensation is claimed."

The essential elements of the Virginia hernia statute have been complied with by the claimant in this case. The commission conceded all except "Fourth". There must be proof of an injury arising by accident out of and in the course of the employment, whether it be hernia or not. The hernia statute is not more strict in its definition of an accident than when this word is used in connection with other injuries and under other circumstances.

The New Hampshire court in *Rivard* v. *McElwain Co.* (N. H.), 58 A. (2d) 501, decided April 6, 1948, held that a death from hernia which resulted from ordinary and usual strain of work was an accident within the meaning of the Workmen's Compensation Act. There the court made this

statement: "A more troublesome question is whether an ordinary and usual strain at work contributing to death by hernia strangulation is 'by accident' within the meaning of our Workmen's Compensation Act. R. L., c. 216, section 2. Men, like machines, may suddenly break down. Logically there should be no difference whether the break-down occurs internally or externally. If strain causes a broken wrist, nobody questions the accidental nature of the injury. 'If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident.' *Brown's Case,* 123 Me. 424, 425, 123 A. 421, 422, 60 A. L. R. 1293. An accident may be said to arise out of and in the course of the employment if the exertion producing the accident is too great for the man undertaking the work, even though the degree of exertion is usual and ordinary and 'the workman had some predisposing physical weakness.' *Guay* v. *Brown Co., supra,* 83 N. H. 392, at page 395, 142 A. 697, at page 699, 60 A. L. R. 1284; *Giguere* v. *Whiting Co.,* 107 Vt. 151, 160, 177 A. 313, 98 A. L. R. 196. This does not express any new principle in our law, since it was held in *Moore* v. *Rumford Printing Co.,* 88 N. H. 134, 137, 185 A. 165, 167 that: 'The question is not whether it would affect the ordinary man, but whether it affected the decedent.' "

And the court further stated: "The word 'accident' in our statute has been consistently interpreted and used in its popular sense. *Boody* v. *K. & C. Mfg. Co.,* 77 N. H. 208, 90 A. 859, L. R. A. 1916A, 10, Ann. Cas. 1914D, 1280; *Newell* v. *Moreau,* 94 N. H. 439, 55 A. (2d) 476. While the decedent's injury was not accidental as to cause, it was as to result and this is sufficient under the statute. *Moore* v. *Rumford Printing Co., supra,* 88 N. H. at page 138, 185 A. at page 168; *Zwiercan* v. *International Shoe Co.,* 87 N. H. 196, 176 A. 286; *Giguere* v. *Whiting Co.,* 107 Vt. 151, 177 A. 313, 98 A. L. R. 196, 205. The holding in this case that the decedent's injury was by accident is supported by the great weight of authority. See Horovitz, Current Trends in Workmen's Compensation (1947) 499-

501, for a careful review and analysis of the recent authorities."

New Hampshire has no hernia statute but that fact does not detract from the *Rivard Case* as authority here.

See also N.A.C.C.A. Law Journal, Current Trends in Workmen's Compensation, May, 1948, pages 46 and 47, where there is reference to many cases supporting the trend to allow compensation in hernia cases similar to the one at bar.

We are conscious of no reason for not aligning Virginia with the weight of authority on this subject and following the trends to which reference has been made, allowing compensation for hernia which may result to an employee while engaged in his regular work. The Virginia hernia statute does not prohibit it. To constitute an injury by accident it is not necessary that there must be a "fall, slip or other fortuitous circumstance". If this were true, an employee who is injured and who slipped or fell would be allowed compensation while one who did not slip or fall would not be allowed compensation though he may have broken an arm or a leg while performing his work in the usual way. This result would be illogical and against the purpose and spirit of the Workmen's Compensation Law.

To constitute injury by accident it is not necessary that there should be an extraordinary occurrence in or about the work engaged in. *Hardware Mut. Cas. Co.* v. *Sprayberry*, 69 Ga. App. 196, 25 S. E. (2d) 74.

██ Whether an employee has suffered an accident or not within the purview of the compensation law is a mixed question of law and fact, and under the evidence in this case we conclude that the employee met his death from injury by an accident arising out of and in the course of his employment. As to him the result was accidental, even though it occurred while he was performing his usual work.

The order of the commission is reversed and the case is remanded with directions that the commission award compensation to the claimants in this case.

*Reversed and remanded.*