Richmond

## WILFRED C. ROBERTSON,
### Individually, and as Trustee, etc., et al.
### v.
## THOMAS M. GILBERT

November 22, 1978.

Record No. 770522.

Present: All the Justices.

*Jonathan M. Murdoch-Kitt (Phoebe P. Hall; Franklin P. Hall; Hall & Hall,* on briefs), for appellants.

*Jeffrey M. Zwerdling (Zwerdling and Oppleman,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

On this appeal, the seller in a contract for the sale of realty assigns error to a decree granting the purchaser specific performance.

The subject property is a lot lying within a larger tract of unimproved land owned at his death by W. Ira Robertson. By will probated in 1917, the decedent created a trust and empowered his executor to sell the land in his estate. In 1975, a special commissioner advertised an auction sale of 33 lots to be "sold by lot as is". The lots, depicted on a rough sketch prepared at the direction of the court without benefit of survey, were identified by lot numbers and acreage. The sketch showed the relevant public roads but no courses and no distances except road frontage. By interlocutory decree, the trial court confirmed the sale of 11 lots and ordered that the 22 lots remaining be "sold by lot . . . as shown on" the sketch which the decree "incorporated by reference". Wilfred C. Robertson and Horace Bernard Robertson, who had qualified as testamentary trustees, were directed to negotiate and consummate sales "according to the terms of the will, whenever they shall be requested so to do" by the testator's nephews.

Thomas M. Gilbert, who had bought Lot 4 at the auction, was interested in acquiring Lot 5E which bordered it on the north. As

shown on the rough sketch (reproduced at the foot of this opinion as Appendix A), Lot 5E is one of five lots in parcel 5 lying south of lots numbered 5A through 5D. The parent tract, parcel 5, is bounded on the west by Taylor Road, on the north by Hembrick Road, on the east by the lands of others, and on the south by Lot 4 and the lands of others. Each of the first four lots has a frontage of 400 feet and Lot 5E a frontage of 510 feet on Taylor Road. The northern boundaries of all five lots are parallel to Hembrick Road. A portion of the southern boundary of Lot 5E is indicated by a broken line and a question mark. The compass of Lot 5E is shown as "27.6 ac."

Gilbert discussed the purchase with Mike Carter, a realtor. Gilbert testified that Carter showed him two "plats", one of which was "a wee bit different" from the sketch he had seen at the auction, but "[t]he acreage was the same and the footage was the same." Carter told him that he "had physically marked out on the ground the five lots . . . [and] was selling between the two stakes that were marked 5-D and 5-E along Taylor Road" and that Lot 5E "was the balance of the parcel [5]." Gilbert said he determined the value of Lot 5E "taking into consideration I had bought a parcel adjacent to it that would not perk, the amount of land and I came up with the figure of $8000.00." Asked what Carter had said "with reference to acreage", Gilbert testified, "I was buying a lot. They told me there was no guarantee as to the acreage or whether it would perk or not."

On February 4, 1976, Carter prepared a "purchase contract" which identified the land as "Lot 5E" and fixed the price at $8000. Gilbert signed the document and made a deposit of $200. Only one of the trustees signed, but their attorney advised Gilbert that both had done so.

By letter dated February 26, 1976 addressed to the attorney, Gilbert confirmed a telephone conversation held the previous day. Referring to "PARCEL 5E—ROBERTSON ESTATE (27 ACRES ±)", Gilbert said that "[t]he necessary approvals have been obtained by you"; that his surveyor was "proceeding with his work"; and that "[t]he property line on the north side starts at a point 1600' from the intersection of Taylor and Hembrick Roads and runs parallel to Hembrick Road". That survey disclosed that

parcel 5 had more frontage on Taylor Road than shown on the rough sketch and that it contained 50 to 60 acres of land south of Lot 5D. In a letter to Gilbert dated March 26, 1976, the attorney advised that the trustees were "willing to convey to you a lot containing 27.6 acres ± which fronts 510 feet on Taylor Road and which is the southernmost lot in parcel 5."

Gilbert then gave his surveyor written instructions to make a "Boundary Survey" of "27 ± Ac." The plat prepared from this survey showed a lot whose northwest corner was substantially more than 1600 feet south of the intersection of Taylor and Hembrick Roads. This lot fronted approximately 608.63 feet on Taylor Road, bordered Gilbert's Lot 4 on the south, and contained 35.86 acres. The trustees rejected this plat, and Gilbert employed another surveyor to make a second plat which is reproduced below as Appendix B.

The lot shown on the second plat contained 40.49 acres. The northwest corner was 1687.26 feet south of the intersection of Taylor and Hembrick Roads, and the northern boundary paralleled Hembrick Road. The western boundary fronted 510 feet on Taylor Road. Although the southwest corner was 30 feet north of that shown on the first Gilbert plat, a portion of the southern boundary bordered Lot 4. The effect of this plat was to leave in the Robertson estate an unsold, unidentified parcel lying between Lots 5D and 5E.

Rejecting Gilbert's second plat, the trustees' attorney submitted a draft deed which described Lot 5E as a lot containing 27.6 acres adjoining Lot 4 with a frontage of 510 feet on Taylor Road and a northern boundary parallel to Hembrick Road. A month later, the attorney advised Gilbert by letter that he would be considered in breach of contract if he did not go to settlement within ten days on a 27.6 acre lot fronting 510 feet on Taylor Road. The letter also offered to sell Gilbert the surplus land between Lots 5D and 5E, then designated as Lot 5F, at $325 per acre.

The parties were unable to agree, and Gilbert filed a bill for specific performance against Wilfred C. Robertson and Horace Bernard Robertson, individually and as testamentary trustees. Gilbert alleged that, "[b]y written contract dated February 4, 1976, plaintiff agreed to buy, and defendant . . . . agreed to sell, the

following described property. . . ." The bill of complaint then described the property as "containing 40.49 acres" as shown on Gilbert's second plat, a copy of which was attached to the bill. Defendants denied this allegation, and answered, *inter alia*, that the "purported contract" was "not a completed contract, it lacks essential contractual elements, and there was a mutual mistake of fact as to precisely what property constituted Parcel 5". During the course of the testimonial evidence adduced by Gilbert, Gilbert introduced 15 exhibits and defendants three. The chancellor overruled defendants' motion to strike, and defendants introduced no further evidence.

By decree entered December 21, 1976, the chancellor held that Gilbert was "entitled to the relief requested in his bill of complaint", ordered defendants to execute and deliver to Gilbert a deed conveying the 40.49 acre lot shown on Gilbert's second plat, and directed Gilbert to pay defendants the balance due under the contract.

On appeal, defendants contend that the chancellor "erred in ordering a parcel deeded to the purchaser which . . . varied from the property he had 'contracted' to buy", and "in granting specific performance of a contract where there was uncertainty as to what land was to be sold and no meeting of the minds on the subject matter of the contract." In our view, the issues posed by these assignments of error are dispositive, and, contrary to Gilbert's position, we believe they were fairly raised by the pleadings, motions, and argument in the court below.

For purposes of this opinion, we assume without deciding that the February 4, 1976 "purchase contract" was executed by all necessary parties or their agents in accordance with the terms of the will. Yet, we are of opinion that Gilbert failed to bear the burden of proving the existence of the contract alleged in his bill of complaint and that the chancellor erred in enforcing that contract.

Specific performance is not a remedy of right. To invoke this extraordinary equitable remedy, the complainant must first prove a contract enforceable at law, 71 Am. Jur.2d *Specific Performance* § 13 (1973), and the performance granted must be "the very (specific) thing called for by the contract", Dobbs, *Remedies* § 12.2, at 795 (1973).

> In a suit for the specific performance of a contract to sell land, the description of the property must be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby.

*Pavlock* v. *Gallop*, 207 Va. 989, 993, 154 S.E. 2d 153, 156 (1967).

■ The record shows that the parties never agreed what property was intended. In support of the chancellor's decree, Gilbert argues that both parties contemplated a sale in gross rather than a sale by the acre. The realtor told him, Gilbert says, that Lot 5E was "the balance" of parcel 5 south of Lot 5D and that "there was no guarantee as to the acreage". This argument, however, is contradicted by the fact that both of the plats Gilbert submitted pictured a lot with specific acreage representing only a portion of the balance of parcel 5.

The lot the parties had in mind when they executed the "purchase contract" was Lot 5E as shown on the rough sketch. That sketch identified three boundaries along lines known to all parties, the distance of one of those boundaries, and the acreage entailed. The only uncertain detail was the location and configuration of the southern boundary which, in part, was indicated by a broken line and question mark.

To the minds of the trustees, this detail was largely immaterial. Constrained as they were by the terms of the will and the authority vested in them by the interlocutory decree, the trustees never at any time intended to sell Gilbert anything but a lot with a stated acreage and a specific road frontage, a lot readily ascertainable simply by striking a southern line closing the three known boundaries. Moreover, until the error in the rough sketch was discovered, they intended that lot to adjoin Lot 5D.

On the other hand, the placement of the southern boundary was a detail of crucial importance to Gilbert. Not until the survey revealed that a 27.6 acre lot lying within the three known boundaries and containing only 510 feet road frontage was too narrow to have a boundary adjacent to Lot 4 did Gilbert challenge the quantum of acreage. Indeed, all the evidence shows that Gilbert

never at any time intended to buy anything but a lot which bordered the lot he had acquired earlier.

It is true, as Gilbert points out, that the trustees later offered him a deed to a lot adjoining Lot 4. But the lot described in that deed contained only 27.6 acres, and Gilbert never accepted that offer. Nor did the trustees ever agree to sell Gilbert the lot shown on either of the two plats he submitted. At no time, then, before or after the signing of the "purchase contract", was there any meeting of the minds on "what property was intended by the parties".

> Where the court is unable, from all the circumstances of the case, to say whether the minds of the parties met upon all the essential particulars . . . or trace out any practical line where their minds met, specific performance will be refused.

*Clinchfield Co.* v. *Powers*, 107 Va. 393, 398-99, 59 S.E. 370, 372 (1907), quoting from *Blanchard* v. *Railroad Co.*, 31 Mich. 43, 18 Am. Rep. 142 (1875).

We hold that, as a result of the mutual mistake of fact caused by the error in the rough sketch approved by the court, the minds of the parties never met on the contract the chancellor enforced or on any other enforceable contract, and the decree will be reversed. Gilbert is entitled, however, to reimbursement of the deposit he made pursuant to the purported contract, plus interest, and the cause will be remanded for entry of a new decree consistent with this opinion.

*Reversed and remanded.*

## APPENDIX A

## APPENDIX B

PLAT OF SURVEY

Now or Formerly LYTTLE

AREA: 40.49 ACRES

Now or Formerly ROBERTSON ESTATE

Now or Formerly WILLIAM BRANCH, EST.

PLAT OF A 40.49 ACRE PARCEL OF LAND SITUATED ON THE EAST LINE OF ST. ROUTE 646 CLOVER HILL DISTRICT CHESTERFIELD CO., VA.

STATE ROUTE 646 (Joplin Road)

SCALE: 1"=200'
DATE: MAY 28, 1976

WILLIAM J. SCHMIDT & ASSOC.
ENGINEERS & SURVEYORS
4916 W. MARSHALL ST. - RICHMOND, VA.