## CIRCUIT COURT OF FREDERICK COUNTY

Casey

v.

Va. Employment Commission
and Cives Steel Co.

April 7, 1987

Case No. (Chancery) C-86-168

By JUDGE HENRY H. WHITING

The Court has before it an appeal from the order of the Virginia Employment Commission denying unemployment benefits on the ground that the complainant was guilty of misconduct connected with his work.

The misconduct alleged by the employer was violation of a company rule by his absence from work for three consecutive days without notification to the company. The notification provision is contained in Article 9, Section 1, Paragraph 1 of the union contract as follows: "When an employee is absent from work for three (3) consecutive regular work days without having requested permission to be absent or without notifying the company during such three (3) days of the necessity of being absent" his seniority status is terminated and he becomes a probationary employee subject to discharge or layoff for "just" or "proper" cause under Articles 13 and 14 without any grievance provisions.

The appeal asserts the following grounds for reversal of the Commission.

First, the company failed to sustain its burden of proof to demonstrate misconduct connected with the

claimant's work, "relying solely on hearsay evidence on a key factual issue." (Opening memorandum, page 6.)

Second, the claimant "did communicate his probable absence the first day to the company." *Ibid*.

Third, "The company [did not] act consistently in establishing and enforcing its work rules."

Fourth, "The evidence does not support the Commission's finding of claimant's deliberate or willful violation of the company's work rules." (Memorandum filed November 14, 1986.)

For the reasons which follow the appeal is denied:

## (1) *Hearsay Evidence Question*

The statute in question in this case, § 60.1-65, Virginia Code, sets forth that:

> The manner in which disputed claims shall be presented . . . and the conduct of hearings and appeals before any deputy, appeal tribunal or the Commission shall be in accordance with regulations prescribed by the Commission for determining the rights of the parties whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure.

Acting pursuant to that authority the Commission has adopted its Regulation XI providing that:

> All hearings shall be conducted in such manner as to ascertain the substantial rights of the parties and the appeals examiner shall not be bound by the common law or statutory rules of evidence or by technical rules or procedures.

The claimant testified he told his supervisor the Friday before his Monday absence that he would "probably not come in Monday [because] I had a doctor's appointment Monday and I might not be in." (R., page 23.) He said the foreman's response was simply that he "just nodded his head" (*ibid.*) and in another place "just okay, and walked away, that's all. Just like he would any other

time." (R., page 23.) At another point, when cross-examined by the hearing officer as to why he didn't say definitely he wasn't going to come in since he knew he had the appointment and wasn't going to work at 7:00 that morning, he said, "I told him that. I said I won't be in Monday, I got a doctor's appointment, I won't be in--I probably won't be in at all. I told him I had an appointment in the morning but I didn't know if I'd be in at all meaning, you know, that I might not be back during the afternoon is what I was trying to--to convey." (R., page 27.) When the claimant examined the personnel manager at the hearing, the claimant made this statement: "Did I not tell you [after he had been discharged] that I had told . . . my supervisor, that I was going to be off Monday, I already had a doctor's excuse and I wasn't sure if I was coming in Monday at all. I didn't say I'd be off all day but I said I wasn't sure if I'd be in Monday." In response to that question, the personnel manager indicated that the claimant did so state but then the witness went on and said: "I questioned the supervisor involved. The supervisor said Mr. Casey had not advised him that he would be off Monday." (R., page 15.) Again, on page 16: "The supervisor said he had no knowledge of Mr. Casey's being off. He was not advised of Mr. Casey's being off on Monday." (R., page 16.) The contention is that the Commission should not have admitted the hearsay statements in the first place and, secondly, that even though admissible it could not have made a finding that the claimant failed to communicate his intention to be off Monday in his conversation with the supervisor the preceding Friday based on the hearsay statement, which was in contradiction of the claimant's direct testimony that he had so notified the supervisor. Taking these contentions in order.

(a) Hearsay evidence has been held to be admissible in Virginia in administrative hearings. *American Furniture Co. v. Graves*, 141 Va. 1 (1925); *Derby v. Swift & Co.*, 188 Va. 336 (1948). The workmen's compensation statute applicable in *American Furniture*, which has been in effect since 1918, provided that the "Commission may make rules, not inconsistent with the Act, for carrying out the provisions of this Act. Processes and procedure under this Act shall be as summary and simple as reasonably may be . . ."

Apparently counsel agreed that hearsay was admissible under the statute but argued that it alone could not support an award. As the Court said:

> Under the Virginia statute, the Commission is not to be governed in the hearing by common law rules of evidence and . . . hearsay statements . . . were properly admissible in evidence. But it is claimed that the Commission, after hearing such evidence, should have given it no probative weight or value whatever in reaching its findings of fact, if the evidence, other than the hearsay statements, was not of itself sufficient to support the findings. We cannot bring our minds to assent to the correctness of such a position. To do so would be to hold that the statute, in making the hearsay evidence admissible, did a useless and senseless thing. On the contrary, we think that it follows, inevitably, from the fact that the hearsay evidence is made admissible by the statute, that the Commission is given the discretion to give it come probative weight, and that it is for the Commission to determine, and not for the court, what probative weight, if any, they should give to it in arriving at the findings of fact. . . . There are, it is true, a number of decisions of other courts cited and relied on for the employer, involving the construction of other workmen's compensation laws, holding that the appellate court has jurisdiction to inquire whether there is sufficient evidence, other than hearsay evidence, to support the findings of fact of the Commission; that, in the absence of such other sufficient evidence, the findings of fact will be regarded as having no evidence to support them; and that the award, in such case, will be for that reason set aside. In such decisions we deem it sufficient to say that they are so contrary to our view of the correct construction of the Virginia statute that we cannot follow them, and hence we do not review them.

Since counsel for neither side cited the *American Furniture Co.* case or its progeny, the Court has been compelled to read a number of cases in other jurisdictions following up on the contentions about the admissibility of hearsay[1] both parties have made on this issue. Those contentions are inapposite in view of *American Furniture* and its progeny.[2]

Subsequent Virginia cases construing the Industrial Commission statute and rules have reiterated that:

> The Industrial Commission is not governed in its decisions by common law rules of evidence, and we have held that hearsay statements are properly admissible in evidence before it. The Commission has the discretion to give probative weight to hearsay statements in arriving at its finding of facts. *Williams v. Fuqua*, 199 Va. 709, 714 (1958).

*Derby v. Swift & Co., supra,* pointed out that: "Hearsay evidence is admissible under the Workmen's Compensation Act and is used as the basis of an award." 188 Va. at 341.

(b) Even if hearsay evidence had not been admissible in Virginia, the failure to object made it admissible, Sect. 382 *Administrative Law*, 2 Am. Jur. 2d 188-189. "Hearsay evidence is generally admissible in proceedings before administrative agencies, at least for limited purposes,

---

[1] Many of those cases are assembled in an annotation entitled "Hearsay Evidence in Proceedings before State Administrative Agencies," 36 A.L.R.3d 12. That annotation refers to American Furniture.

[2] In those jurisdictions where hearsay was admissible but decisions could not be based solely on that, the rule has come to be known as the "residual" rule. While it was in vogue for a time in New York, Matter of Carroll v. Knickerbocker Ice Co., 218 N.Y. 435, 113 N.E. 507; Matter of Roewer v. Melton, 62 A.D.2d 1120, 404 N.Y. Supp. 2d 434, it no longer applies in that state; 300 Gramatan Avenue Associates v. State Division of Human Rights, 45 N.Y.2d 176, 180, 408 N.Y. Supp. 2d 54, 379 N.E.2d 1183; Matter of McCauley v. State Tax Commissioner, 67 A.D.2d 51, 415 N.Y.2d 118; Eden v. Bloom, 57 N.Y.2d 831, 442 N.E.2d 56 (1982); Tryon v. Bloom, 460 N.Y. Supp. 2d 396, 92 A.D.2d 396, 92 A.D. 700 (1983).

*especially when not objected to.*" (Emphasis added.) Cited in support thereof is the Supreme Court of the United States decision of *Spiller v. Atchison, Topeka & Santa Fe Railway Co.*, 253 U.S. 117, 64 L. Ed. 810, 40 S. Ct. 466 (1919). In that case the Court said:

> The evidence was not objected to as hearsay when introduced, nor, indeed, at any time during the hearing before the Commission. Counsel did in some instances assert that there was a failure of proof and suggested that the proceedings ought to be dismissed. But the objections came too late, and were too general in character, to be equivalent to an objection to the reception of the evidence because hearsay. Even in a court of law, if evidence of this kind is admitted without objection it is to be considered and *accorded its natural probative effect as if it were in law admissible.* (Emphasis added.) *Id.*, at 130 and 819.

While this claimant argues procedural due process and other constitutional considerations excluding hearsay from consideration in cases of this kind, *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971), held hearsay evidence admissible in a Social Security hearing under a Social Security statute and regulations substantially similar to the Virginia workmen's compensation and unemployment statutes. That Court recognized the due process and other constitutional arguments discussed in *Goldberg v. Kelly*, 397 U.S. 254, 262-263, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970), but nonetheless held that:

> A written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence

> supportive of a finding by the hearing examiner
> adverse to the claimant, when the claimant has
> not exercised his right to subpoena the reporting
> physician and thereby provide himself with the
> opportunity for cross-examination of the physi-
> cian.

The Court believes this case disposes of the extensive
constitutional arguments made by both sides in this case,
some of which appear to this Court to be fairly remote
from the issues involved in this case.

(c) The claimant has argued that Virginia has never
passed on whether the claimant's expectation in receiving
unemployment compensation is a property interest protected
by the due process provisions of the Fifth and Fourteenth
Amendments of the United States Constitution, and states
on page four of the post-argument memorandum that:

> This question has heretofore escaped definitive
> judicial resolution. In *Klimco v. VEC*, 216
> Va. 750 (1976), the Virginia Supreme Court
> considered whether the complainant was denied
> his right to cross-examination and skirted
> the constitutional question by finding on the
> facts of the case, claimant was denied the
> right of confrontation and cross-examination
> "only because he did not pursue them."

The opinion in *Klimco* discussed *Goldberg v. Kelly, supra,*
and the due process considerations set forth in that
case dealing with a property interest in welfare payments
but cast doubt upon whether its finding would apply to
unemployment benefits in the following language:

> Although welfare payments are not compensation
> for work performed and are made solely on a
> "needs basis," a majority of the Supreme Court
> in *Goldberg v. Kelly, supra,* held that such
> payments constitute a property interest entitled
> to procedural due process protection. Subsequent
> to *Goldberg,* the unanimous court in *Fusari*
> implicitly acknowledged that unemployment compen-
> sation benefits may enjoy the same protection. In

an opinion handed down less than two weeks ago the Supreme Court noted that it "has been implicit in our prior decisions . . . that the interest of an individual in continued receipt of these [social security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). However, because the Court has never explicitly decided this question, we shall assume, without deciding, that the expectation of continued unemployment compensation benefits is a protected property interest. *Id.*, at 756.

One Justice, joined by three other Justices out of the seven Justices who decided the case, concurred:

[B]ut only to the extent that it *assumes* a property interest in the expectation of continued compensation benefits and then holds that due process requirements are satisfied by the pre-termination and post-termination procedures applicable in this case. I do not wish my concurrence, however, to be construed as an agreement with the proposition that there exists a property interest in the expectation of continued compensation benefits. Indeed, I strongly disagree with that proposition. *Id.*, at 763.

Thus in 1976 four of seven Justices did not believe unemployment benefits were "property interests entitled to procedural due process protection." *Ibid.*

The Court concludes that hearsay is admissible in unemployment compensation hearings, and if its probative effect was more than a scintilla of evidence and sufficient from which a rational mind could draw an inference of the truth of the matters asserted therein this would be enough to justify a finding thereon despite contradictory testimonial evidence adduced at the hearing. In the Court's opinion the evidence in this case is of sufficient weight to justify the Commission in concluding that no notice was given by the claimant on Friday afternoon to his supervisor. Apart from the hearsay statement the supervisor

made to the personnel officer, the claimant's own witnesses corroborated the absence of notice in Mr. Anders's testimony on page 41 in response to a question the claimant asked him during the hearing about whether he had ever said anything to the foreman about the claimant's actions that morning. He responded, "On Monday morning, when I got there, Trevor [the foreman] asked me where you was at, and I told him that either you had a doctor's appointment or a dentist's appointment, I didn't know which . . . . But as soon as I got there that morning, he asked me if you was coming in that day." (R., page 41.) The inescapable inference from the foreman's question was that he had *not* been notified of the claimant's expected future absence that morning and was conduct which corroborates what he verbally told the personnel officer. Indeed, as claimant's attorney admits, the claimant himself "testified, in part, against his interest, saying candidly that he was uncertain whether his supervisor, who was wearing ear plugs, heard." (Memorandum, page 2.)

As an alternate basis for the holding the Court points out that even if the notification on Friday was sufficient to advise the foreman the claimant might be absent Monday:

(a) It was only for part of the day and not the whole day.

(b) The company only learned of the claimant's alleged ankle injury by *asking* Mr. Anders where the claimant was on Thursday of that week. (R., page 48.) For the reasons assigned in the following paragraph hereof, that was not a notification in compliance with the company rule.

## (2) *Notification of Company*

The claimant maintains that the company was "notified," arguing that even if the foreman was not advised of his plan to be off on Monday, the foreman discovered that he would be off Monday by *asking* Mr. Anders, the co-worker with whom he customarily rode to work, where he was that Monday morning and being told he had gone to the doctor or dentist was a sufficient notification under the company rule. The difficulty with the contention is that I believe the company rule requires him to notify the company of

the necessity of being absent. The subject of the sentence is "the employee." The verb in one of the clauses is "requesting permission" and in the other clause "notifying the company," and the object of the sentence is the "necessity of being absent." The very definition of "notify" underscores this conclusion. In Webster's New World Dictionary (College Ed.) "notify" is defined as "to give notice to; inform, announce to." The American Heritage Dictionary of the English Language (Houghton-Mifflin) defines it as "to give notice to [someone]; inform. From the Latin *notificare*--to make known." Black's Law Dictionary defines it as "to make known. In legal proceedings and in regard to public matters this word is generally, if not universally, used as importing notice *given* by some person whose duty it was to give it, in some manner prescribed, and to some person entitled to receive it, or be notified." (Emphasis in the original.) Roget's Thesaurus gives the synonyms of "notify" as "inform, advise, tell, acquaint, apprise, let know, serve notice, send word, enlighten, instruct, tip off."

This sentence states clearly and unambiguously that the employee must take some affirmative action[3] to tell the employer of his reason for being absent and it is not sufficient that the employer discover that the employee is absent by the employer's inquiry.

An additional reason why the Monday morning answer to the employee's question was an insufficient notification is that Mr. Anders really did not know of the "necessity of being absent" and could not communicate that to the foreman; all he could tell the employer was that the claimant went to the doctor or the dentist but it may

---

[3] The claimant's mere writing down his doctor's appointment on the foreman's calendar could fairly be held on the evidence as insufficient notification for these reasons:

(1) There is no evidence to indicate the content of the notification.

(2) There is no evidence that the foreman referred to this calendar in making up his schedule of expected employees for that day.

(3) There is no evidence that the foreman actually saw and understood the notice; on the contrary, his question to Mr. Anders of "Where is [the claimant]?" implies that he neither saw nor understood the notation.

not have been a *necessary* appointment for all Mr. Anders knew.

The references to two sections of the Virginia Code in support of the argument of notification actually militate against the claimant's position.

In the first citation of § 8.01-288, "process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or excepted as provided in this chapter," would be an unnecessary exception in the Code if the claimant's position as to notification were sound.

Likewise § 55-248.6, cited by the claimant dealing with notice for the landlord-tenant law, has specific language providing in subsection (a) that, "A person shall be deemed to have notice of a fact if he has actual knowledge of it; if he has received a notice or notification of it," and subsection (b) provides that, "A person 'notifies' or 'gives' a notice or notification to another by taking steps reasonably calculated to inform another person whether or not the other person actually comes to know of it." The above-quoted language is also a specific legislative definition of notice which it apparently thought was necessary in order to change the application of the word "notice" or "notify" from that intended by its ordinary usage. No such special language is included in the controlling document in this case and the Court must assume that the authors intended its usual and ordinary meaning and not a special meaning created by specific statutory enactment.

### (3) *Consistent Enforcement of the Company Rule*

This assertion is that the company had not previously enforced the rule. There is sufficient evidence for the fact finder to conclude that a *three*-day absence did require notification. Mr. Anders, a co-worker, in being questioned by Mr. Casey:

> Q. It's [calling in] not really standard procedure, you don't have to worry about calling in more or less?

A. You're supposed to, I guess, but I--I've never if you got--if you miss more than *three days you've gotta call in* or they'll fire you. Gotta be--they got--they gotta be notified, but I've never--" (Emphasis added.) (R., page 45.)

Claimant's failure to recognize the distinction between a one- or two-day absence and a three-day absence is fatal to his contention.

### (4) *Deliberate Violation of Company Rule*

This contention is that even if the evidence was sufficient to find that the claimant was absent without notification for a period of three work days in violation of the company rule, the fact that he was ill excuses the violation of the company work rule. Three Commission decisions are cited in support for the proposition that uninformed absence for illness cannot constitute a deliberate and willful violation of the company's work rule. All three cases involved absence for illness but no violation of a specific company rule. The thrust of these cases is that excessive absenteeism if due to illness cannot constitute misconduct in connection with the claimant's work; unexcused and unjustified chronic absenteeism does constitute misconduct. This is not the reason assigned by the Commission for this claimant's termination. Rather the termination was for a violation of a company work rule requiring notification for an absence even though the reason for the absence might be justified. While I cannot find a specific Employment Commission case on that point, three cases from the Employment Commission are instructive. In *Nix v. Rosso and Mastracco*, Case No. 13483-C (1980), the Commission terminated benefits where a claimant was discharged for misconduct in connection with her refusal to take a polygraph examination which was required by company policy in effect when she employed and a part of her contract of employment. She alleged that she saw no reason for the polygraph questions and believed these kind of examinations were useless. The Commission held that she was disqualified because she deliberately violated a company rule reasonably designed to protect its legitimate

interest in executing its security and property protection procedures. In a subsequent, somewhat similar case, *Bauserman v. O'Sullivan Corporation*, 25517-C (1985), the same rule was applied where the employee agreed to take the polygraph test after a theft in the plant but then refused to cooperate. The Commission quoted *Branch v. Virginia Employment Commission*, 219 Va. 609 (1978), as follows:

> In our view, an employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer . . . .

In *Branch* the Court upheld the validity of a company rule requiring a discharge when any employee had three garnishments within a period of *twelve* months, reversing, however, because the facts showed that the garnishments were within a period of *seventeen* months.

There seems to be little doubt of the legitimate interest of an employer in knowing how many employees will report for work. However, this company has not required notification except when the absence is for more than three consecutive regular work days and that extended period only strengthens the reasonableness of the company's rule. This employee's previous unexcused absences and prior warnings, coupled with his own testimony, demonstrated that he chose not to personally inform the company of his reason for being absent and thus he deliberately violated a reasonable company rule.

Counsel for the Commission will draw the appropriate order reciting the claimant's objections.