COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges McCullough and Decker
Argued at Chesapeake, Virginia

ORTHOPAEDIC AND SPINE CENTER

MEMORANDUM OPINION[*] BY
v.     Record No. 0917-14-1                 JUDGE STEPHEN R. McCULLOUGH
                                            DECEMBER 23, 2014

KEYSTONE AUTOMOTIVE INDUSTRIES, INC., AND
  SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

W. Edgar Spivey (Kaufman & Canoles, P.C., on briefs), for
appellant.

Katharina Kreye Alcorn (Midkiff, Muncie & Ross, P.C., on brief),
for appellees.

This case calls upon us to descend into a modern Slough of Despond, otherwise known as medical billing. The Orthopaedic and Spine Center, OSC, seeks full payment for medical services it provided to an employee of Keystone Automotive Industries. Keystone contends it is contractually entitled to a deep discount for those services. The commission found in Keystone's favor. On appeal, OSC argues that the commission: (1) erred in finding that Keystone or Sedgwick Claims Management Services, the third-party administrator for Keystone, was entitled to discounts through a contract with First Health Group; (2) should have found that Keystone and Sedgwick waived any right to rely on the First Health/OSC contract; and (3) erred in failing to enforce the clear and explicit terms of the First Health/OSC contract, specifically, those that prohibit a retroactive denial of charges. We conclude that Keystone failed to meet its burden of

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

proving the existence of a contractual relationship between First Health and Keystone or

Sedgwick. Therefore, we reverse the commission's decision.[1]

BACKGROUND

In September 2007, OSC provided health services to a Keystone employee who had been

injured on the job. The bill for those services totaled $13,449. Sedgwick reviewed the claim on

behalf of Keystone and forwarded it to Coventry Health Care. Coventry provides "cost and care

management solutions for insurance carriers, third party administrators and self-insured

employers." Coventry, in turn, "forwarded [the bill] to Aetna for repricing." "Repricing" means

that Aetna reduces the bill according to a contractually-agreed reimbursement rate.

In 2005, Coventry acquired First Health. Two years later, in 2007, Coventry acquired the

assets of Concentra/Focus. Concentra/Focus had a preexisting contractual relationship with

Aetna. Upon acquiring Concentra/Focus, Coventry continued the relationship with Aetna. This

contractual relationship gave Coventry access to the "Aetna WC access bridge focus[/]workers'

comp access." Based on these "network reductions" obtained via Aetna, Sedgwick agreed to pay

OSC $2,402 out of the $13,449 billed.

On October 15, 2007, Sedgwick mailed an "Explanation of Review" to OSC, referencing

the "Aetna WC Access Bridge Focus/Aetna Workers Comp Access" and itemizing the claimed

discounts. The Explanation of Review also directed OSC to contact "Coventry Health Care

Workers C" should it have any questions regarding this analysis.

When OSC contested these discounts, Keystone initially claimed that the Aetna contract

bound OSC to accept them. Later, following this Court's decision in Orthopaedic & Spine Ctr.

v. Muller Martini Mfg. Corp., 61 Va. App. 482, 737 S.E.2d 544 (2013), Keystone abandoned

---

[1] In view of our holding on the first assignment of error, we do not address appellant's second and third assignments of error.

- 2 -

that position and argued, instead, that an agreement between OSC and a different entity, First Health, bound OSC to an even more sharply discounted bill – reimbursing $2,326.64 instead of the Aetna contract's $2,402.

There is no dispute that, in 2002, OSC and First Health entered into a contract that established a "PPO Plan." Section 1.5 of the contract specifies that only certain "Payors" will be covered by the contract:

> Provider understands that by execution of this Agreement, Provider agrees to participate in a Preferred Provider Panel (PPO Plan) being created by First Health. Provider further understands that First Health will offer to certain Payors the opportunity to contract with First Health to utilize the services of the health care providers participating in the Preferred Provider Panel. Payors may elect to use some or all of the providers participating in First Health's PPO Plan. First Health will supply Provider with [a] list of all Payors that have entered into Agreements with First Health to utilize Provider's services.

The contract defines "covered medical services" as "those services provided to a Participating Patient for which the Payor is obligated to pay pursuant to the Payor's Health Plan." "Participating patients" are those employees who have "elected to receive care from Provider and who are covered by the Payor's Benefit or Insurance Plan." A "payor agreement" "is an instrument between a Payor and First Health or its authorized representative which provides for Participating Providers to render health care services pursuant to this Agreement to Participating Patients at the reimbursement amounts set forth herein." The contract defines a "Payor" as

> an employer, trust fund, insurance carrier, health care service plan, trust, nonprofit hospital service plan, a governmental unit, any other entity which has an obligation to provide medical services or benefits for such services to Participating Patients, or any other entity which has contracted with First Health to use First Health's PPO Plan.

- 3 -

Providers under this contract are reimbursed for services at a lower rate. In exchange, Providers gain access to more patients, and Payors must make full payment within thirty days of receiving an accurate and complete bill.

Maureen Sample, Coventry's Director of National Networks, admitted that Keystone did not contract with First Health and had no knowledge if Keystone had a contract with Concentra/Focus. Initially, she testified that Sedgwick had access to the First Health workers' comp network. She also stated that Sedgwick was a client of First Health, that Sedgwick was a member of First Health's client network, and that she had seen the contract, but it had "been a very long time." She further explained that Sedgwick was a client of Concentra for a period of time. "[W]hen Sedgwick was a client of First Health, Sedgwick actually moved their claim management services to Concentra prior to the acquisition," but Sedgwick returned to Coventry when Coventry acquired "the Concentra/Focus business." When asked whether she had produced the Sedgwick-First Health agreement in this case, however, she clarified her testimony: "The Sedgwick agreement I think that was in place at the time of the date of this service was the Sedgwick agreement with Concentra/Focus, not directly with First Health." She was not aware of any contracts between OSC and Concentra/Focus.

When the deputy commissioner found in favor of Keystone, OSC appealed to the full commission. The commission found that "there [was] sufficient evidence of a contract between First Health and Sedgwick to establish that the defendants [were] entitled to third party beneficiary status under the medical provider's First Health Agreement." Further, the commission found that Sample's testimony "provide[d] evidence of an agreement between First Health and Sedgwick whereby Sedgwick had access to the First Health network of providers . . . and the reduced reimbursement rates." Finally, the commission found that the way the bill was processed provides "further evidence of a contractual relationship between Sedgwick and

- 4 -

Coventry." Commissioner Marshall dissented, on the basis that Keystone failed to establish the applicability of the First Health discounts, either through documentary evidence or through Sample's testimony.

ANALYSIS

I. KEYSTONE BEARS THE BURDEN OF PROVING ITS ENTITLEMENT TO A DISCOUNT THROUGH A CONTRACT WITH FIRST HEALTH.

As a threshold matter, the parties contest who bears the burden of proof. According to Keystone, OSC bore the burden "to prove the breach [of contract] and the extent and amount of damage resulting from that breach." For its part, OSC argues that it is Keystone that must prove its contractual entitlement to the discounts that it claims.

Medical reimbursements in workers' compensation cases are governed by statute. Code § 65.2-605(A) provides that an employer is liable for medical services "limited to such charges as prevail in the same community for similar treatment when such treatment is paid for by the injured person." Medical providers may, of course, contractually obligate themselves to provide services at a discounted rate rather than at the prevailing community rate. The party claiming that the default statutory standard has been displaced by a contractual agreement bears the burden of proving such an agreement. See Robertson v. Gilbert, 219 Va. 620, 624, 249 S.E.2d 787, 789 (1978) (requiring the plaintiff to "bear the burden of proving the existence of the contract alleged in his bill of complaint"); Bloomberg-Michael Furniture Co. v. Coppes Bros. & Zook, 141 Va. 18, 32, 126 S.E. 59, 63 (1925) (requiring the party alleging the existence of a contract to "establish by a preponderance of the evidence the existence of a contract on which to base a recovery for a breach thereof"); see also Banks v. Plow & Hearth Co., 2013 VA Wrk. Comp. LEXIS 750 (Aug. 26, 2013) ("The [c]ommission will uphold contractual agreements between health care providers and insurers, but the insurer has the burden of proving the

- 5 -

existence and applicability of any contract that it claims entitles it to a discount."). In this instance, that burden fell on Keystone.

## II. KEYSTONE DID NOT MEET ITS BURDEN OF PROVING THE EXISTENCE OF A CONTRACT BETWEEN SEDGWICK AND FIRST HEALTH.

"Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). In addition, we will review the evidence in the light most favorable to the party who prevailed below. Wainwright v. Newport News Shipbldg. & Dry Dock Co., 50 Va. App. 421, 430, 650 S.E.2d 566, 571 (2007). "[T]he commission's legal determinations are not binding on appeal and will be reviewed *de novo*." Id. We review issues of contract interpretation *de novo*. Schuiling v. Harris, 286 Va. 187, 192, 747 S.E.2d 833, 836 (2013).

There is no question that Coventry acquired First Health, and OSC signed a contract with First Health. No evidence, however, establishes that the employer, Keystone, is entitled to any First Health discount. Sample testified that she was not aware of any such contractual relationship. The question, then, is whether Sedgwick, the claims administrator for Keystone, can avail itself of the discounts provided for in the contract between First Health and OSC.

Under the terms of First Health's contract with OSC, it is plain that OSC has not opened its doors to provide discounted services to all comers. Rather, the discounted services are available to particular "Payors," i.e., those who have signed an agreement with First Health. To demonstrate its entitlement to the claimed discounts, Keystone was required to establish the existence of an agreement between Sedgwick and First Health. No such contract between Sedgwick and First Health was introduced into evidence.

Ordinarily, under the best evidence rule, when the terms of a contract are in dispute, the contract itself must be presented. "It is elementary law that 'where the contents of a writing are

desired to be proved, the writing itself must be produced, or its absence sufficiently accounted for before other evidence of its contents can be admitted.'" Butts v. Commonwealth, 145 Va. 800, 816, 133 S.E. 764, 769 (1926) (quoting 1 Simon Greenleaf, A Treatise on the Law of Evidence 682 (16th ed. 1899)); see also Rule 2:1002. The Supreme Court explained the basis for the rule as follows:

> Observation and experience have taught us that human memory is very frail, and that the unaided testimony of witnesses is a very unsatisfactory means of establishing facts of long standing. This is especially true when a witness undertakes to give his recollection of the contents of writings.

Butts, 145 Va. at 816, 133 S.E. at 769.

It is settled law that the commission operates under more relaxed rules of evidence. See, e.g., Derby v. Swift & Co., 188 Va. 336, 341, 49 S.E.2d 417, 419 (1948) ("Hearsay evidence is admissible under the Workmen's Compensation Act and is used as the basis of an award."). We will assume, for purposes of this opinion, that Keystone was not required to produce the actual contract between First Health and Sedgwick but could, instead, rely on Sample's deposition testimony. Sample's testimony, however, still fails to establish the existence of a contract between First Health and Sedgwick. She testified that Sedgwick "ha[d] access to the First Health workers' comp network." She stated that she had seen "the Sedgwick First Health agreement" but that it had "been a very long time." She *immediately* clarified, however, that "[t]he Sedgwick agreement I think that was in place at the time of the date of this service was the Sedgwick agreement with Concentra/Focus, not directly with First Health." To her knowledge, OSC had not entered into a Preferred Provider Agreement with Concentra/Focus.

Sample's testimony falls short of establishing that Sedgwick was a Payor entitled to the First Health PPO network's discounts when OSC provided services to Keystone's employee. At best, Sample's testimony establishes a relationship between Sedgwick and Concentra/Focus

when services were provided, not between Sedgwick and Concentra/First Health. Keystone presented no testimony from Sedgwick and no documentary evidence to establish Sedgwick's contractual entitlement to a discount with First Health. The mere fact that Sedgwick was a client of Coventry's client does not prove its entitlement to a discount via First Health.

Further, we cannot agree with the commission that Sedgwick's repricing process with Coventry provides evidence of a relationship between Sedgwick and First Health. Coventry acquired First Health in 2005 and Concentra/Focus in 2007. The Explanation of Review and the repricing that occurred is consistent with Sample's testimony about a relationship between Sedgwick and Concentra/Focus (later acquired by Coventry) but not a relationship between Sedgwick and First Health. Indeed, Sample specifically testified that Sedgwick "sent the medical provider's bill to Focus now Coventry for repricing."

We conclude that Keystone failed to meet its burden of proving a contractual relationship, between First Health and Sedgwick, that would entitle Keystone to benefit from the discounts specified in the contract between First Health and OSC.[2]

### III. THE DOCTRINE OF LACHES DOES NOT BAR OSC'S CLAIM.

Finally, we conclude that the equitable doctrine of laches does not bar OSC's claim. "Laches is the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 755, 601 S.E.2d 693, 699 (2004). "The litigant raising laches as a defense bears the burden of demonstrating both the requisite delay and prejudice." Id. As in Berglund, the employer cannot establish any prejudice such as lost evidence or witnesses who

---

[2] We express no opinion on any other discounts Keystone might be entitled under contracts other than the one with First Health. Our opinion is limited to resolving the question presented, namely, whether Keystone established its entitlement to a discount based on a contract between Sedgwick and First Health.

could not be found due to the delay in bringing the claim.  Id.  Keystone cites a number of pages in the record in an effort to establish prejudice.  We have reviewed those parts of the record, but they simply do not support Keystone's claim of prejudice.  Accordingly, we find that Keystone has not established the applicability of the doctrine of laches to its dispute with OSC.

CONCLUSION

We reverse the decision of the commission.

Reversed.