FRANKLIN MORTGAGE CORPORATION, et al.

v.

JO C. WALKER, et al.

No. 0725-86-4

Decided October 6, 1987

COUNSEL

Stephen W. Robinson (Boothe, Prichard & Dudley, on brief), for appellants.

Peter M. Sweeny (Thacher, Swiger, Sweeny & Day, on brief), for Jo C. Walker.

John K. Coleman (Slenker, Brandt, Jennings & Johnston; Conrad A. Fontaine, on brief), for Aetna.

OPINION

**KOONTZ, C.J.** — In this appeal from a May 22, 1986, Industrial Commission award of compensation to Jo C. Walker and a finding that Federal Insurance Company (Federal) was solely liable for these payments, we are presented with the following issues: (1) whether the deputy commissioner and the full commission erred in permitting Timothy Walker to testify concerning conversations he had with the claimant on May 28, 1985; (2) whether the deputy commissioner erred in not allowing counsel for Federal to depose Timothy Walker; (3) whether the commission erred in finding that Jo C. Walker suffered an injury that arose out of and in the scope of her employment; and (4) whether the commission erred in finding that Federal was the sole insurance carrier liable for the payment of benefits to claimant. For the reasons stated below, we affirm the decision of the commission with regard to the first three

issues and reverse with regard to the fourth issue.

## I. The Accident.

Mrs. Walker was employed by Franklin Mortgage Corporation (Franklin) on May 28, 1985, as an underwriter and branch manager of the company's Woodbridge office. Her duties required that she travel between this office and the company's main office in Fairfax and other locations. Mrs. Walker lived near the Woodbridge office with her husband, Timothy Walker, and their small child. Based on her commuting experience for the past year, she was paid a car allowance of $175 per month which was a set amount and did not fluctuate as a result of actual miles traveled or expenses incurred for gas and repairs. This payment was stipulated as compensation for driving between the two offices and not expenses of travel between her home and the office. Mrs. Walker's official working hours were from 9:00 a.m. to 5:00 p.m., but her schedule was flexible and she frequently worked later in the evening. Generally, in dividing her time between the two offices, she began her work day at the office in Woodbridge, where she spent twenty to thirty percent of her time, and then proceeded to the Fairfax office where she spent the balance of her time.

On May 28, 1985, at approximately 4:00 p.m., prior to leaving the Fairfax office, Mrs. Walker obtained a check for the rental payment on the Woodbridge office and a check for cleaning services for that office from Lynn McVicker, the president's wife and part-time bookkeeper. Mrs. Walker related to Mrs. McVicker that "tonight I'm going to go meet Tim and the baby." She further related to several other employees that she was "going to Woodbridge . . . ." She was seriously injured in an automobile accident at 4:30 p.m. on Route 50, approximately one mile from the Fairfax office.

Over objection, Timothy Walker testified that at approximately 4:15 p.m. he spoke with his wife by telephone. She told him that she was going by the Woodbridge office and that she might be late getting home because it was raining heavily and that traffic "was a bear." Based on that conversation, Mr. Walker testified that he did not expect his wife to arrive at home until between 5:30 p.m. and 6:00 p.m.

At the scene of the accident, Mrs. Walker's briefcase containing various business documents and the previously mentioned checks were recovered. Mark McVicker, the president of Franklin, testified that these documents did not require immediate attention. Louis Dennis, owner of the cleaning service, testified that he normally would have submitted a bill for his services on May 29, 1985, the day following the accident, and would have picked up his check the following week. Robert Turley, a loan officer at the Woodbridge office, however, testified that Mrs. Walker would routinely bring this check to the Woodbridge office from the Fairfax office on the evening the cleaning was performed.

Mr. and Mrs. McVicker testified that in the past, they had casually discussed routes of travel between the Woodbridge and Fairfax offices with Mrs. Walker and that she mentioned the use of Interstate Route 66 or State Route 123 but had not mentioned Route 50. The parties concede that Route 50, while being an optional route between the two offices, is generally congested at rush hour, controlled by numerous stop lights and a slower route.

Due to the extent and nature of her injuries, Mrs. Walker was unable to testify and relate the events which occurred on May 28, 1985.

The commission held that Mrs. Walker had met her burden of establishing that her injury arose out of and in the course of her employment. We agree.

The standard for our review is well settled. A finding by the commission that an injury arose out of and in the course of employment is a mixed question of law and fact and is properly reviewable on appeal. *Dublin Garment Co. v. Jones,* 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986)(citations omitted). Findings of fact made by the commission will be upheld when supported by credible evidence. *Russell Loungewear v. Gray,* 2 Va. App. 90, 92, 341 S.E.2d 824, 825 (1986)(citations omitted). The reviewing court must determine whether the commission's fact findings are sufficient in law to justify an award of compensation on the ground that the accident not only happened during the course of employment, but also arose out of it. *Baggett Transp. Co. v. Dillon,* 219 Va. 633, 637, 248 S.E.2d 819, 821 (1978).

In this case, Federal essentially argues that at the time of the accident, Mrs. Walker left her place of employment and was driving home. It argues that her use of Route 50 rather than a less congested route establishes that she was not going to the Woodbridge office but rather to her home in Woodbridge. Federal further argues that because Mrs. Walker had no specific reason to be traveling to the Woodbridge office, she must have been going to her home. The commission, however, found that Mrs. Walker was injured during regular working hours while traveling between the Fairfax and Woodbridge offices in the course of her employment duties as a branch manager of the Woodbridge office. The fact that contrary evidence may be in the record is of no consequence if there is credible evidence to support the commission's finding. *Russell Loungewear*, 2 Va. App. at 95, 341 S.E.2d at 826. Accordingly, we find no error in the commission's award of benefits to Mrs. Walker.

Federal maintains that the commission erred in permitting Timothy Walker to testify about the conversations he had with his wife on the day of the accident because they were uncorroborated. *See* Code § 8.01-397 (requiring corroboration of out-of-court declarations of a party incapable of testifying). In *Armada, Inc. v. Lucas*, 2 Va. App. 414, 417, 345 S.E.2d 14, 16 (1986), we held that Code § 8.01-397 does not apply to hearings before the commission, and Rule 1 of the Industrial Commission, enacted pursuant to Code § 65.1-18, correctly permits the use of hearsay evidence without corroboration. Accordingly, the commission did not err in permitting the testimony of Timothy Walker.

We also find no merit to Federal's argument that the deputy commissioner erred in not allowing it to depose Timothy Walker. The record reflects that counsel for Franklin and Federal were originally granted permission by the deputy commissioner to depose Mr. Walker. Shortly thereafter, the deputy commissioner dismissed Federal from the proceeding. Federal knew that it was at least a co-insurer, but nevertheless withdrew from further participation in the deposition of Mr. Walker. Counsel for Franklin and Aetna Casualty & Surety Company (Aetna) attended the deposition of Mr. Walker. Thereafter, the deputy commissioner advised Federal that it had been reinstated as a party in the proceeding in addition to Aetna. Mr. Walker's deposition was made available to Federal prior to the hearing on the merits and Federal

has not alleged that this deposition was inadequate or incomplete. Accordingly, we find that Federal was not prejudiced.

## II. The Insurance Coverage.

Prior to April 8, 1985, Franklin carried its workers' compensation insurance with Aetna. On April 8, 1985, Franklin was purchased by N. S. & T. Bank. At that time, N. S. & T. Bank was insured by Federal under a policy which specifically provided for workers' compensation coverage for any business or corporation owned or acquired by N. S. & T. Bank during the policy period. Consequently, Franklin automatically became insured by Federal on April 8, 1985, when Franklin was acquired by N. S. & T. Bank. Federal, however, did not immediately notify the commission of this coverage as required by Code § 65.1-105. However, it is undisputed that as of April 8, 1985, Franklin was insured under both the Federal and the Aetna policies. Pursuant to a request by N. S. & T. Bank, the Aetna policy was cancelled on June 20, 1985, effective midnight April 8, 1985. Aetna, however, did not notify the commission of the policy cancellation until October 9, 1985. Aetna eventually refunded to Franklin the premium for this period. Mrs. Walker was injured on May 28, 1985.

Code § 65.1-105 provides in pertinent part:

A. 1. Every employer who has . . . cancelled his insurance . . . shall immediately notify the Industrial Commission of such cancellation . . . . Every insurance carrier . . . shall in like manner notify the Industrial Commission immediately upon the cancellation of any policy issued by it . . . under the provisions of [the Workers' Compensation] Act . . . .

\* \* \*

B. No policy of insurance . . . issued under the provisions of this Act . . . shall be cancelled by the insurer issuing such policy . . . except on thirty days' notice to the employer and the Industrial Commission, unless the employer has obtained other insurance and the Industrial Commission is notified of that fact by the insurer assuming the risk, or unless said cancellation is for nonpayment of premiums; then ten days' notice shall be given the employer and the Industrial Commission.

■ Our Supreme Court construed Code § 65.1-105 in *Hartford Co. v. Fidelity & Guaranty, Inc.*, 223 Va. 641, 292 S.E.2d 327 (1982). In *Hartford*, Fidelity insured the employer, but cancelled the policy for nonpayment of premiums on April 11, 1980. Fidelity, however, failed to notify the commission of the cancellation as required by Code § 65.1-105. After receiving notice of the cancellation, the employer obtained coverage from Hartford which was in full force and effect on the date of the industrial accident, June 2, 1980. *Id.* at 643, 292 S.E.2d at 327-28. On appeal, Hartford argued that Fidelity was jointly liable for the workers' compensation award because Fidelity's failure to comply with the notice provisions of Code § 65.1-105 defeated its attempt to cancel the policy. *Id.* The Court, however, held that the legislative intent of Code § 65.1-105 was "to protect the worker against a lapse in his employer's insurance coverage." *Id.* at 644, 292 S.E.2d at 328. Since the coverage did not lapse and the injured worker's interests were served, the Court found Hartford solely liable for the loss. *Id.*

Aetna argues that *Hartford* is controlling in the instant case and that since there was no lapse in coverage and Mrs. Walker's interests were served, Federal alone should bear the loss. We disagree. In the instant case, policy lapse is not the controlling issue. Prior to and at the time of Mrs. Walker's accident, both Federal and Aetna had valid policies in full force and effect. Federal's failure to notify the commission of its assumption of coverage did not affect the validity of that coverage on May 28, 1985, when Mrs. Walker was injured. Similarly, Aetna's failure to notify the commission of the cancellation of its coverage until *after the date of the accident* did not affect the validity of that coverage on the day of the accident.

The thrust of *Hartford* was to prevent a lapse in insurance coverage so that the worker would be protected. We do not perceive *Hartford* as prohibiting dual coverage or authorizing the commission to prefer one insurance company over another in the circumstances of this case. We recognize that the employer has a right to cancel one of two policies and that there is no economic benefit to either the employer or the employee in having more than one policy in effect. Nonetheless, we can find no authority which directs or permits the commission to allow a retroactive cancellation of one insurance policy where two policies are in full force and effect

at the time of an accident, thereby placing the sole liability on the remaining insurance company. In fact, under the facts of this case, where Aetna was the original insurance company with coverage in effect at the time of the accident, it received a windfall when Federal automatically became a co-insurer of Franklin when the corporation was purchased by N. S. & T. Bank in April, prior to the May 22, 1986, accident.

Accordingly, we reverse that portion of the commission's decision which holds Federal solely responsible for compensation benefits awarded to Mrs. Walker and remand this case with directions that the commission enter an award holding Federal and Aetna jointly responsible for those benefits.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Hodges, J., concurred.

Duff, J., dissenting in part.

I join the majority in affirming the opinion of the Industrial Commission with regard to the first three issues raised. However, I respectfully dissent from the majority's reversal on the issue of insurance coverage. In my view, the record supports the commission's finding that Federal Insurance Company (Federal) should be solely responsible for providing compensation benefits to the claimant.

The record shows that when N.S. & T. Bank (N.S. & T.) purchased Franklin Mortgage Company (Franklin) on April 8, 1985, Franklin became a named insured under N.S.& T's workers' compensation policy with Federal. By letter dated June 11, 1985, Mr. Clarence Spiva, Senior Vice President of N.S.& T., instructed Aetna to cancel its policy covering Franklin, effective April 8, 1985. Nothing in the record suggests that a back-dated cancellation is not a standard practice in the industry.[1] N.S. & T. was

---

[1] For this proposition, the appellant cited in argument *Grayson-Carroll-Wythe Mutual Insurance Company v. Allstate Insurance Company,* 582 F. Supp. 560 (W.D. Va. 1984), *rev'd,* 753 F.2d 1070 (4th Cir. 1985). Careful examination of the district court opinion demonstrates its inapplicability to the present case. The *Grayson-Carroll-Wythe* case was a contribution action involving two fire insurance policies, each containing apportionment clauses in the event of other insurance. The critical issue turned on Allstate's

aware of the claimant's accident at the time it instructed Aetna to cancel the policy. When Aetna cancelled the policy, effective April 8, 1985, it issued a premium refund for the period subsequent to that date. However, Aetna did not notify the Industrial Commission of the cancellation until October 9, 1985, admittedly a violation of Code § 65.1-105.

In *Hartford Co. v. Fidelity & Guaranty*, 223 Va. 641, 292 S.E.2d 327 (1982), the Supreme Court allowed the cancellation of a compensation policy, effective prior to the date of the accident, although the insurer failed to timely notify the Industrial Commission pursuant to Code § 65.1-105. The Court noted that the statute served two purposes: (1) to give the employer an opportunity to acquire other insurance and (2) to make it possible for the commission to timely invoke its enforcement authority under Code § 65.1-106. Both purposes were designed to offer protection to an injured employee against a lapse of insurance coverage.

In the present case, the commission's holding is in accordance with the purposes articulated in *Hartford* because there was adequate coverage for the claimant under Federal's policy. The commission's holding also finds support in opinions from other jurisdictions. In *Saracione v. Oliver Construction Co.*, 87 A.D.2d 926, 450 N.Y.S.2d 63 (1982), the court overruled a workers' compensation board decision, finding dual coverage where a carrier failed to comply with the cancellation and notice provision of the compensation code. In language similar to that found in *Hartford*, the *Saracione* court stated:

> The purpose of the statutory notice requirement is to protect employers from an unexpected lapse of coverage, not to provide a windfall to subsequent insurers who have assumed the risk. Accordingly, since the employer had obtained other coverage, there was no need to impose the remedy of continued liability on American Mutual for its failure to comply with the notice requirement.

*Id.* at 926, 450 N.Y.S.2d at 64.

position that its policy had terminated by nonacceptance of an offer of renewal. However, the district court rejected this assertion primarily because Allstate had sent the insureds a Notice of Cancellation, which contained a termination date subsequent to the fire loss.

In *Hines v. Cherokee Lines, Inc.*, 509 P.2d 669 (Okla. 1973), the Oklahoma Supreme Court addressed the issue of whether a carrier's failure to comply with the notice and cancellation statute would result in joint and several liability with the other carrier. The court construed a statute similar to Virginia's and stated:

> [W]hen . . . the employer and employee are protected by other insurance then the statute should not be rigidly construed so as to unjustly penalize an insurance carrier for its failure to strictly comply with the notice requirements. *Especially is this so where the employer himself has requested the cancellation and has procured insurance protection from another carrier.*

*Id.* at 671 (emphasis added).

In this case, it was the employer (N.S. & T., purchaser of Franklin Mortgage) who requested the cancellation because it had other coverage with Federal.

The majority opinion states that the *Hartford* decision is not controlling because a lapse in insurance coverage is not the dispositive issue. They rely on the proposition that the rights of the parties are fixed as of the date of the accident. With great respect for the majority's opinion, while I agree that this proposition is a correct statement of law as it applies to the rights of the claimant, the approach is too inflexible in a case where the claimant's rights are not in issue. Here, Mrs. Walker was fully protected by Federal's coverage for all rights accorded to her under the Workers' Compensation Act. Thus, the real conflict is between Aetna and Federal.

The majority finds that Aetna received a windfall when Federal became an automatic coinsurer of Franklin prior to the accident. As I view the case, the majority opinion confers a windfall on Federal by reducing its liability by one-half, although it received a full premium for its increased exposure subsequent to April 8, 1985. Conversely, the majority imposes a liability on Aetna even though its policy had been cancelled at the request of N.S. & T. and Aetna had refunded the premium to them. Federal had no right to expect N.S. & T. to continue paying premiums for Aetna's policy on Franklin when Federal's policy provided identical coverage.

No authority suggests that a back-dated cancellation with a premium refund is illegal or prejudicial to a claimant's rights. Therefore, I would hold that Aetna's policy was effectively cancelled as of April 8, 1985, and that the sole coverage for the industrial accident was with Federal. The old adage that "loss follows the premium" should be applicable in this instance.

The record supports a finding that, at the time of the claimant's accident, all parties were aware that Federal was the compensation insurance carrier. N.S. & T. and Federal knew of this because of the endorsement on the policy issued by Federal. Franklin was aware of this because the employer's first report, filled out shortly after the accident, listed the Chubb Group as the carrier, and Federal was a part of the Chubb Group. Accordingly, I would hold that the cancellation of Aetna's policy at the request of N.S. & T., with no prejudice to the claimant, was a matter of private contract between Aetna and N.S. & T., and that we should not interfere in this area. The commission held: "[T]o find Aetna Casualty and Surety responsible for any of the benefits would be contrary to the election by N.S. & T to cancel coverage and serve no legislative purpose."

Therefore, I believe the record contains ample credible evidence to support the commission's holding on the issue of coverage, and I would affirm.