**Salem**

KEVIN D. BAKER

v.

BABCOCK & WILCOX COMPANY

and

VIRGINIA EMPLOYMENT COMMISSION

No. 0099-90-3

Decided December 18, 1990

420

COUNSEL

Alexander W. Bell, for appellant.

Richard V. Anderson, for appellee, the Babcock & Wilcox Company. Patrice T. Johnson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee, Virginia Employment Commission.

OPINION

**COLE, J.**—This is an appeal from an order of the circuit court affirming a Virginia Employment Commission ("VEC") determination that Babcock & Wilcox ("B&W") discharged Kevin D. Baker for misconduct in connection with his work, thereby disqualifying him from unemployment compensation.

Baker was employed as a security guard by B&W in its nuclear manufacturing facility in Lynchburg from October 16, 1987 until March 30, 1988. On March 30, 1988, Baker was discharged for allegedly violating Work Rule 17 which prohibits the use of abusive, obscene, or threatening language, or engaging in immoral conduct. Specifically, Baker was accused of exposing his genitals to a female employee on the evening of March 29, 1988.

Baker filed a claim for unemployment benefits. On April 3, 1988, claims deputy Kirk Keith of the VEC determined that Baker had not been discharged for reasons that would result in disqualification from benefits. Therefore, Baker was entitled to draw unemployment compensation due to the "absence of evidence to show misconduct." B&W appealed the deputy's determination.

On June 13, 1988, appeals examiner Lucille Spencer conducted a full evidentiary hearing to determine whether Baker had com-

mitted "misconduct connected with his work" as defined by Code § 60.2-618(2). At this hearing, Vince Kline, a unit manager at B&W, testified that he left work at 6:30 p.m. on the night of March 29, 1988. Mara Masterson, a B&W engineer, was still in her office and planned to work a couple of hours of overtime. At 9:30 p.m., Masterson called Kline at home to report that a security guard had exposed himself to her at work. Kline testified that Masterson was crying and her voice sounded broken and nervous over the phone. The next morning, Kline and Masterson met with Richard W. Levin, the manager of safeguards and security, to report the incident. Masterson identified Baker from several photographs as the man who had exposed himself. Kline also testified that since the incident Masterson "has not been working any overtime to speak of . . . and when she does she makes sure there are other people in the building."

Richard W. Levin testified that on the morning of March 30, 1988, he met with Masterson and Kline. Levin had Masterson prepare a written statement of the previous night's events. Levin and Merle Alvis, manager of human resources, decided that when Baker reported to work they would have Ken Smith, the Equal Opportunity Employment Officer, take his statement. Levin and Alvis would then interview Baker based on this statement. At no time at the beginning of the investigation was Baker advised of the exact nature of the complaint. He was told only that there had been a complaint from a female employee in reference to harassment. The plan was to get Baker's statement and work from there.

The investigation proceeded as planned with Smith taking Baker's statement. This statement mentions a conversation Baker had with a young lady who was working late. Baker stated this conversation was about her job, how late she was working, and where she was from. The statement did not mention anything unusual about this encounter. Levin testified that there was no doubt this was the same conversation described by Masterson.

During the interview with Alvis and Levin, Levin asked Baker if there was anything that happened during the time he was talking to the lady that might have been misinterpreted. In response, Baker said, "I'm not a flasher." This statement was made before Baker had been advised that the charge involved indecent exposure. Alvis then asked Baker if he had exposed himself to Masterson, to which Baker asked what she meant by "exposed."

Baker then said he was not a flasher, rapist or child molester. Baker was then advised of the nature of the charges. He stated that he did not know what she could have seen. He then stated that maybe his zipper was down and she saw something because he does not wear underwear. Levin testified that, over the course of the interview, Baker's statements changed from surprise that these charges could be made, to stating that maybe his zipper had been down, to stating he had later discovered that his zipper was down. However, at all times Baker denied having deliberately exposed himself or having been aware that his pants were unzipped in Masterson's presence.

Masterson's unsworn written statement was introduced into evidence. This statement asserted that on March 29, 1988, at approximately 7:30 p.m., a security guard stopped by her office door and asked if there was anybody else "up here" with her. She replied that there was not. He asked how long she would be staying and she replied that she would be working until 8:30. After a few minutes, she walked to a vending machine. As she returned, she noticed the same guard about to open her office door. Once he saw her, he continued down the hall. Several minutes later, he stopped by her office again. The guard then engaged her in a conversation about what she did and where she was from. She then stated, "At this point I happened to notice that his pants were unzipped and his private parts were outside his pants, fully exposed." She then told the guard that she needed to get back to work and he left. Masterson did not testify at the hearing.

Dennis Martin, a security guard at B&W, testified that on March 29, 1988, he was on duty with Baker. Baker told him that he had been making his rounds and had talked to a young lady. Baker stated that during this conversation he noticed that the lady became upset and defensive with him and he apologized for bothering her and left. Martin identified Masterson as the young lady with whom Baker had spoken.

Merle Alvis testified that on March 30, 1988, she met with Rick Levin and Vince Kline and was informed of the events of the previous evening. Alvis reviewed Masterson's statement and questioned her about the incident. Masterson was nervous and bordering on tears, but Alvis described her as being candid and forthright. Masterson recounted the events as they appeared in her written statement. Masterson reported that Baker's pants were

unzipped, his private parts were fully exposed and hanging outside of his pants. Alvis testified that Masterson was receiving counseling and had herself filed a workers' compensation claim as a result of the incident. Masterson did not wish to testify because she did not want to see Baker again and because she was concerned that, since Baker was a security guard, he might be able to obtain information about her.

Alvis also testified that she had interviewed Baker and his description of the events matched very closely with Masterson's as far as timing, positions within the office, and the conversation itself. She asked Baker why someone would file a complaint against him, to which he repeatedly said he did not know. However, as Alvis was returning from making a telephone call, she heard Baker make the statement to Levin that he was "no flasher." When asked why he said this, Baker said that he was no flasher, rapist, or child abuser. Baker's statements were made before he had been advised of the charges against him. When asked if he had exposed himself, Baker responded that even if his pants were unzipped he did not think he would be fully exposed. He then stated that if his zipper had been open she might have seen something because he does not wear underwear. Baker then stated that he had noticed that his pants were unzipped at the end of his shift, which would have been around 10:00 p.m.

Baker called Brett Hunter, Lawrence E. Sayre, and Lisa Baker, all of whom testified that Baker does not wear underwear.

Baker testified in his own behalf. He testified that he had noticed his pants were unzipped ten or fifteen minutes after talking to Masterson. He stated, "Evidently they were unzipped in her presence." He stated that at the time of the interview with Alvis and Levin, he knew only that there was a sexual harassment charge against him. Baker denied that he knew that his pants were unzipped and denied that his genitals were exposed or hanging outside of his pants.

Appeals examiner Spencer held that B&W had not met its burden of proving that Baker had committed misconduct in connection with his work under Code § 60.2-618(2) because it had not shown that Baker deliberately exposed himself to Masterson. The appeals examiner stated, "The claimant's testimony denying the allegations made against him has been consistent throughout the

Commission's investigation of the claim, and was not patently incredible or unbelievable. Accordingly, when compared with the unsworn statement of this other employee, the claimant's testimony is entitled to receive the greater weight." B&W appealed this decision.

VEC special examiner Charles A. Young, III, conducted an appellate hearing on September 15, 1988, and determined that B&W had shown that Baker deliberately exposed himself and was therefore disqualified from benefits. In deciding this dispute Young stated, "The resolution boils down to a determination of whether the exposure was deliberate, as maintained by the employer, or merely inadvertent as maintained by the claimant." Young stated that the failure of Masterson to testify was "really of little consequence" because Baker virtually confirmed almost everything in her statement. Also, the responses Baker gave during the investigation were strongly indicative of a guilty reaction on his part. Baker did not tell Alvis and Levin that Masterson had been upset as he told Martin. He also blurted out, "I'm no flasher," before being advised of the charges against him. His story changed from conceding that his zipper could possibly have been down to the statement that he discovered it was unzipped ten or fifteen minutes after seeing Masterson.

A petition for review was filed with the Circuit Court for the City of Lynchburg, which affirmed the VEC's decision on the ground that hearsay is generally admitted in administrative hearings and that the non-hearsay on the record was sufficient to meet the burden of proof.

Code § 60.2-618(2) provides that an individual is disqualified from receiving unemployment compensation benefits if the individual is discharged for "misconduct connected with his work." The necessary misconduct occurs when an employee *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer." *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978)(emphasis in original). B&W Work Rule 17 prohibits the use of abusive, obscene, or threatening language, or engaging in immoral misconduct. Baker has conceded that if he deliberately exposed himself to Masterson he would be guilty of "misconduct related to his work."

■ B&W had the burden of proving that Baker was guilty of misconduct. *See Blake v. Hercules, Inc.*, 4 Va. App. 270, 273, 356 S.E.2d 453, 455 (1987). On review of VEC decisions, the findings of the commission as to facts, if supported by the evidence and in the absence of fraud, are conclusive, and the jurisdiction of the court is confined to questions of law. Code § 60.2-625. Special examiner Charles A. Young, III found that B&W had proved that Baker deliberately exposed himself. On appeal, the issues are: (1) whether sufficient evidence supports the findings of the commission; and (2) whether the admission of Masterson's written statement denied Baker his constitutional right of cross-examination.

Masterson's statement and the testimony of the witnesses at the administrative hearing were admitted over the repeated objection of Baker's attorney that such evidence constituted hearsay. The use of hearsay evidence in administrative hearings creates two problems. One is whether the hearsay evidence is admissible; the other is to what extent such evidence may provide the evidentiary foundation for a factual finding by an administrative body. *See* Annotation, *Hearsay Evidence in Proceedings Before State Administrative Agencies*, 36 A.L.R.3d 12, 26 (1971).

■ Hearsay evidence is admissible in VEC proceedings. Code § 60.2-623(A) provides:

> The manner in which disputed claims shall be presented, the reports required from the claimant and from employers, and the conduct of hearings and appeals before any deputy, appeal tribunal or the Commission shall be in accordance with regulations prescribed by the Commission for determining the rights of the parties. Such regulations need not conform to common law or statutory rules of evidence and other technical rules of procedure.

Current VEC regulations implement this statutory authority by providing as follows:

> The appeals examiner shall conduct the hearing in such a manner as to ascertain the substantive rights of the parties without having to be bound by common law, statutory rules of evidence, or technical rules of procedure. In addition to testimony, the appeals examiner may accept relevant docu-

ments or other evidence into the record as exhibits, upon motion of a party.

Rules and Regulations Affecting Unemployment Compensation, VR 300-01-4(2)(F).

Case law also supports the admissibility of hearsay evidence in administrative proceedings. *See American Furniture Co. v. Graves*, 141 Va. 1, 15, 126 S.E. 213, 216 (1925). In *Derby v. Swift & Co.*, 188 Va. 336, 341, 49 S.E.2d 417, 419 (1948), the Court stated, "Hearsay evidence is admissible under the Workmen's Compensation Act and is used as the basis of an award." In *Williams v. Fuqua*, 199 Va. 709, 714, 101 S.E.2d 562, 566 (1958), the Court stated, "The Industrial Commission is not governed in its decisions by common law rules of evidence, and we have held that hearsay statements are properly admissible before it." Although *Graves, Derby*, and *Williams* are workers' compensation cases, they are equally applicable to a VEC proceeding because the enabling statute of the Industrial Commission is similar to Code § 60.2-623.

In the present case, the issue whether hearsay evidence alone can support the finding of fact of the VEC need not be decided since sufficient non-hearsay evidence in the record supports the VEC decision. Through Baker's own testimony at the hearing the following facts are known: (1) Baker spoke to Masterson in her office on the night of March 29, 1988; (2) Baker has not worn underwear since leaving the Marine Corps; and (3) Baker discovered his pants were unzipped ten to fifteen minutes after speaking with Masterson. It is also known through the testimony of Levin and Alvis that Baker's story changed over the course of the interview on March 30, 1988. Special examiner Young stated that Baker virtually confirmed almost everything in Masterson's statement. Young's decision was based, not on the hearsay, but on the direct evidence in the case. Under Code § 60.2-625, it cannot be said that this finding of fact was not supported by the evidence or that it was brought about through fraud. Therefore, the finding of the Commission as to facts is binding.

Baker also contends he was denied his right to cross-examine Masterson in violation of the constitution and the rules of the VEC. We disagree. Baker was unable to cross-examine Masterson only because he failed to subpoena her and pursue cross-examina-

tion. Moreover, we hold that, under the circumstances of this case, Baker possessed no absolute constitutional right of cross-examination.[1]

■ In *Richardson v. Perales*, the Supreme Court stated:

We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

402 U.S. 389, 402 (1971). Similarly, in *Klimko v. Virginia Employment Commission*, 216 Va. 750, 762-63, 222 S.E.2d 559, 569-70, *cert. denied*, 429 U.S. 849 (1976), the Supreme Court of Virginia stated: "If claimant did not enjoy the right of confrontation and cross-examination or any of the other rights available to him under the laws and regulations, it was not because they were denied him; it was, insofar as the record discloses, only because he did not pursue them." In *Klimko* the claimant had the right to subpoena witnesses. *Id*. The Court went on to state that, because the Supreme Court never had explicitly decided whether unemployment compensation benefits enjoy due process protection, the Court would "assume, without deciding, that the expectation of *continued* unemployment compensation benefits is a protected property interest." 216 Va. at 756, 222 S.E.2d at 565 (emphasis added). The Court ultimately, however, found that if due process rights were denied it was only because the claimant had failed to pursue them. Four concurring justices strongly disagreed with the proposition that there exists a property interest in continued com-

---

[1] Neither the sixth amendment to the United States Constitution nor article I, § 8 of the Virginia Constitution are implicated in this case. Those constitutional provisions are limited in application to criminal prosecutions. Baker's claim, therefore, must rest under the more general structure of his rights to due process guaranteed by the fourteenth amendment and article I, § 11 of the Virginia Constitution.

pensation benefits. *Id.* at 763, 222 S.E.2d at 570 (Carrico, J., concurring). Under the circumstances of this case, we hold that Baker had no property right in the form of an entitlement to unemployment compensation benefits. This case involves the initial awarding of benefits and not the termination of benefits previously granted. *See Perales*, 402 U.S. at 407 (distinguishing the facts of *Perales* from those in *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

In summary, we hold that the evidence was sufficient to support the VEC's finding of misconduct connected with Baker's work. In addition, we find that Baker was not denied his right to cross-examination under the VEC regulations or the constitution. Accordingly, we affirm.

*Affirmed.*

Koontz, C.J., and Baker, J., concurred.