COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


CHAPMAN LUMBER COMPANY, INC. AND
 WOOD PRODUCTS OF VIRGINIA GROUP
 SELF-INSURANCE ASSOCIATION
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 1024-97-1          JUDGE JAMES W. BENTON, JR.
                                          NOVEMBER 18, 1997
GREGORY W. GREENE


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Bradford C. Jacob (Taylor & Walker, P.C., on
          brief), for appellants.

          Randolph A. Raines, Jr. (Ferguson, Rawls,
          MacDonald, Overton & Grissom, P.C., on
          brief), for appellee.


     Chapman Lumber Company, Inc. appeals the Workers'

Compensation Commission's award of benefits to Gregory W. Greene

for his work-related injury by accident.  Chapman Lumber contends

that the commission erred (1) in admitting hearsay evidence

concerning a doctor's referral; (2) in finding Chapman Lumber

responsible for certain medical treatment; and (3) in awarding

temporary total disability benefits from March 20, 1996 and

continuing.  For the reasons that follow, we affirm the award.

                              I.

     Upon appellate review, this Court must construe the evidence

in the light most favorable to the party prevailing below.  In

addition, we must uphold the commission's findings of fact when

---

          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

they are supported by credible evidence.  See Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993); Jensen Press v. Ale, 1 Va. App. 153, 157, 336 S.E.2d 522, 524 (1985).

The evidence proved that Greene was employed by Chapman Lumber as the operator of a front-end loader.  On April 5, 1995, Greene was climbing onto the loader when he slipped and fell to the ground, landing on a piece of pine bark and "snapping" his knee.  Greene told a supervisor about the injury but said that he would continue to work because he could not afford to take any time off.

Three weeks later, Greene called William Chapman, the president of Chapman Lumber, and told Chapman that Greene's knee would not bear his weight.  Chapman gave Greene the names of two doctors.  When Greene called the first doctor's office, he was informed that the doctor would not be able to see him for ten days.  Greene called the second doctor and was told that the doctor would be out for one to two weeks.  Upon receiving these responses, Greene again called Chapman.  Chapman told Greene that if he was "in that much pain," he should use his health insurance and go to the emergency room.

Greene went to a hospital emergency room where he was referred to Dr. Smith, an orthopedic surgeon.  Dr. Smith examined Greene and ordered an MRI.  After reviewing the MRI, Dr. Smith diagnosed a peripheral tear of the posterior body of the medial

meniscus and a possible tear of the anterior cruciate ligament and recommended surgery. Greene testified that Dr. Smith gave him a choice of physicians in two locations, Greenville and Norfolk. When Greene chose Greenville because of transportation considerations, Dr. Smith referred Greene for surgery to Dr. Barsanti. Later, upon learning that he would not be able to obtain transportation to Greenville, Greene testified that he called Dr. Smith and asked if he could instead go to Dr. Persons in Suffolk. Greene testified that Dr. Smith told him to take the referral letter Dr. Smith had written to Dr. Barsanti and give it to Dr. Persons. At the hearing, the deputy commissioner ruled that Greene's testimony regarding his telephone conversation with Dr. Smith about his request to see Dr. Persons was inadmissible because it was hearsay.

After reviewing the MRI, Dr. Persons performed reconstructive surgery on Greene's knee on July 11, 1995. On January 11, 1996 and March 20, 1996, Dr. Persons diagnosed further complications as a result of the initial injury and recommended Greene undergo a second arthroscopic surgery in the summer of 1996. On March 20, Dr. Persons noted that Greene could not perform "any manual labor until this problem is fixed."

The deputy commissioner ruled that Chapman Lumber was not responsible for the care rendered by Dr. Persons because no evidence proved that Dr. Smith referred Greene to Dr. Persons. The deputy commissioner awarded Greene compensation for temporary

total disability from April 24, 1995 until March 20, 1996.  The deputy commissioner rendered his decision on September 30, 1996. Following that decision, the medical reports of Dr. Richard T. Holden were tendered to the commission.[1]

Upon review, the commission ruled that the hearsay testimony concerning Dr. Smith's referral to Dr. Persons was admissible. Therefore, the commission held that Dr. Persons' treatment was authorized and that Chapman Lumber was responsible for the care rendered by Dr. Persons.  The commission also found that Greene remained totally disabled after March 20, 1996 and awarded him benefits continuing from that date "until circumstances require a modification."

## II.

Chapman Lumber first contends that the hearsay testimony concerning Dr. Smith's referral of Greene to Dr. Persons was inadmissible.  We disagree.  The principle is well established that "the Commission is not governed by common-law rules of evidence and . . . it has discretion to give probative weight to hearsay statements in arriving at its findings of fact."  <u>Chavis Transfer v. Dicks</u>, 229 Va. 548, 555, 331 S.E.2d 449, 453 (1985). <u>See also</u> <u>Williams v. Fuqua</u>, 199 Va. 709, 714, 101 S.E.2d 562, 566 (1958) (acknowledging that "[t]he . . . Commission is not

---

[1]Dr. Holden operated on Greene's knee in November 1996. However, the record contains no indication that the commission accepted Dr. Holden's reports for filing.  Indeed, the commission in its April 11, 1997 review decision did not refer to those records.

governed in its decisions by common law rules of evidence, and . . . that hearsay statements are properly admissible before it."); Derby v. Swift & Co., 188 Va. 336, 341, 49 S.E.2d 417, 419 (1948) (holding that "[h]earsay evidence is admissible under the Workmen's Compensation Act and is used as the basis of an award.").

Consistent with these principles, the commission's rules provide, in part, as follows:

> Except for rules which the Commission promulgates, it is not bound by statutory or common law rules of pleading or evidence nor by technical rules of practice.
>
> The Commission will take evidence at hearing and make inquiry into the questions at issue to determine the substantial rights of the parties, and to this end, hearsay evidence may be received.  (Emphasis added.)

Virginia Workers' Compensation Commission Rule 2.2.  On numerous occasions this Court has referred to the commission's rule permitting hearsay and has held that hearsay evidence is admissible before the commission.  See Cox v. Oakwood Mining, Inc., 16 Va. App. 965, 969, 434 S.E.2d 904, 907 (1993); Baker v. Babcock & Wilcox Co., 11 Va. App. 419, 426, 399 S.E.2d 630, 634 (1990); Franklin Mtg. Corp. v. Walker, 5 Va. App. 95, 99, 360 S.E.2d 861, 864 (1987), aff'd en banc, 6 Va. App. 108, 367 S.E.2d 191 (1988).

The commission, as the finder of fact, was entitled to determine the weight and credibility of Greene's testimony.  See Uninsured Employer's Fund v. Mounts, 24 Va. App. 550, 559, 484

S.E.2d 140, 144 (1997). The commission found that Greene's testimony was credible. Moreover, the evidence proved that Dr. Persons' medical records contained the referral letter from Dr. Smith to Dr. Barsanti and contained Dr. Smith's medical reports concerning Greene. That evidence corroborated Greene's testimony. Therefore, we cannot say that the commission's finding was not supported by credible evidence.

Chapman Lumber further argues that when the commission ruled on review that the hearsay evidence was admissible, the commission was required to remand the case for additional evidence. We disagree. The commission found that "apart from the issue of the truth or falsity of the attributed statement by Dr. Smith," Greene was authorized to seek treatment with Dr. Persons. Credible evidence in the record supports that finding. Furthermore, the record established that Greene disclosed in his pre-hearing deposition that Dr. Smith referred him for treatment. The record also established that Dr. Persons treated Greene and that Dr. Persons' files contained Dr. Smith's reports and referral letter. Thus, the issue regarding the referral was not a surprise.

In addition, the commission's rule allowing hearsay is so clear and firmly established that Chapman Lumber's objection seeking to bar the evidence was meritless, as was the deputy commissioner's ruling. Moreover, after the evidentiary hearing, Chapman Lumber had the opportunity to question Dr. Smith when his

deposition was taken and failed to pursue the issue of the referral.  We find no error in the commission's ruling.

III.

"Whether the employer is responsible for medical expenses . . . depends upon . . . whether the treating physician made a referral to the patient."  Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985).

Greene testified that Dr. Smith offered him a choice between physicians in Norfolk or Greenville.  Greene chose Greenville because of transportation concerns.  However, Greene testified that when his transportation situation changed, prohibiting travel to Greenville to see Dr. Barsanti, Greene then telephoned Dr. Smith to ask if he could see Dr. Persons instead.  Dr. Smith told Greene that he should give Dr. Persons the letter Dr. Smith had written to Dr. Barsanti.

Greene's testimony, along with the corroborating evidence found in Dr. Persons' files, supports the commission's finding that Greene received a referral from Dr. Smith to be treated by Dr. Persons.  Therefore, the commission did not err in ruling that Chapman Lumber was responsible for the medical treatment provided by Dr. Persons.

IV.

In determining that Greene was entitled to temporary total disability benefits from March 20, 1996 and continuing, the commission relied upon Greene's testimony and Dr. Persons'

medical reports and deposition.

Dr. Persons testified that when he saw Greene on March 20, 1996, Greene still had "a limited range of motion" in his knee and was "having some painful popping coming from the back of his knee." Dr. Persons' March 20 report indicated that Greene was still suffering discomfort and tenderness and was using a cane. In view of Greene's continuing problems, Dr. Persons recommended additional surgery and stated, "At this time I don't think he is able to do any manual labor until this problem is fixed."

Greene's testimony is further evidence in support of the commission's decision that he was unable to return to his pre-injury employment after March 20, 1996. At the hearing, Greene testified that he was having trouble going up and down steps, his knee was swelling, and he could not straighten his leg completely. Greene testified that sitting for long periods of time caused pain and walking on uneven terrain caused sharp pain in his knee.

For these reasons, we affirm the commission's finding that Greene was entitled to disability benefits commencing April 24, 1995 and continuing. Because the record does not establish whether Dr. Holden's reports were accepted for filing by the commission, we remand the case to the commission for a determination whether those reports were properly filed and, if so, whether the "circumstances require a modification" of benefits after January 23, 1997.

<u>Affirmed and remanded.</u>