COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Kelsey
Argued at Salem, Virginia


VIRGINIA EMPLOYMENT COMMISSION

                                             MEMORANDUM OPINION* BY
v.        Record No. 1436-03-3            JUDGE JAMES W. BENTON, JR.
                                                   MAY 4, 2004
ANNA D. HILL AND
 B. SHESHADRI, M.D.,


                FROM THE CIRCUIT COURT OF WISE COUNTY
                         J. Robert Stump, Judge

          James W. Osborne, Special Counsel and Assistant Attorney General
          (Jerry W. Kilgore, Attorney General; David E. Johnson, Deputy
          Attorney General, on brief), for appellant.

          Hugh F. O'Donnell (Client Centered Legal Services of Southwest
          Virginia, on brief), for appellee Anna D. Hill.

          No brief or argument for appellee B. Sheshadri, M.D.


        The trial judge reversed the decision of the Virginia Employment Commission and awarded

unemployment insurance benefits to Anna D. Hill.  Presenting five questions for review, the

Commission contends the trial judge improperly ignored the Commission's findings, which underlie

the Commission's denial of unemployment benefits, and rendered an erroneous decision by failing

to apply the statutorily prescribed scope of review.  We agree and reverse the judgment.

                                            I.

        In pertinent part, Code § 60.2-625(A) provides as follows:

          In any judicial proceedings under this chapter, [concerning
          unemployment compensation benefits,] the findings of the
          Commission as to the facts, if supported by evidence and in the

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

The case decisions applying this statute highlight two well established principles. First, where, as in this case, fraud is not an issue, "the dispositive question is whether the Commission's findings of fact were supported by evidence." Brady v. Human Resources Institute, 231 Va. 28, 29, 340 S.E.2d 797, 798 (1986). This is the question to be answered by the trial judge on review and by this Court on appeal. Id. Second, under well established standards of review, we "must consider the evidence in the light most favorable to the finding[s] by the Commission." Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987).

II.

The record establishes that Hill's application for unemployment benefits indicates she separated from her employment as a secretary in the office of Dr. B. Sheshadri by "voluntary quit." In the part of the application styled "remarks," Hill wrote: "[h]ad death in family, mother collapsed, had to miss work, they did not like it, had no sick or bereavement days at this job. Gave my notice and worked it out and quit." After Hill filed the application, a claims deputy collected information informally from both Hill and the employer. The claims deputy's written "record of facts" indicates Hill said that she had quit her employment, that the employer "did not like [Hill] having to miss days," and that she had agreed to work until they could find a replacement. The claims deputy wrote the following as Hill's further explanation of events:

> I turned in my resignation letter on 5/12/00. I told them I was
> willing to work past the two weeks until they found someone. On
> 5/30/00 Ms. Sheshadri called to say they had found someone and I
> did not need to come in the next day. My grandfather had been in
> the hospital for awhile and then passed away on 5/4/00. I had to
> take my mother to visit him in the hospital. My [mother] collapsed
> the day he died. After that I had to take her to the doctor and back.
> I missed approximately 1.5 weeks of work. Remarks were made to
> me by Ms. Sheshadri about the other girl not missing when her

- 2 -

grandfather died. Dr. Sheshadri got upset when I called in. My family comes first. My mother is doing much better now.

After [my grandfather] passed away, I was having to miss some half days or a few hours. They did not talk about firing me. She just said their office could not operate under those conditions. I made up my work.

The day before I gave notice, Dr. Sheshadri got hateful when I called in. He was really displeased. I really felt bad. I typed up a letter and gave it to him. Things did not get any better after I gave notice. Dr. Sheshadri said he was getting tired of it when I called in the day before I gave notice.

The claims deputy also spoke to Dr. Sheshadri and wrote in the "record of facts" that Hill gave notice of her intention to quit on May 12 because she had "family problems." The claims deputy also included in the "record of facts" the following statement from the doctor:

[Hill] voluntarily quit. Work was available for her at the time she left. She is a good worker. Her attendance had not been good. Once she said she was going to the doctor and I learned that she did not go by contacting the doctor. Later she said she had been to the doctor. The day before she resigned, she called in to say that she could not work, I told her I needed to talk to her about missing so much work. She decided to quit. . . . I was not hateful to her.

The claims deputy ruled that Hill had voluntarily quit without good cause and issued a determination that Hill was "disqualified for benefits." Hill appealed the decision.

The Commission sent notice of a hearing to the parties at the addresses each had given. At the September 12, 2000 hearing before an appeals examiner, the employer's office manager, Malini Sheshadri, appeared. Hill was not present. The appeals examiner entered into the record Hill's application for unemployment benefits, the claims deputy's record of facts, the claims deputy's decision, Hill's notice of appeal, and the Commission's notice of hearing.

The office manager testified that Hill had been in training from February 21 to March 22 before becoming a permanent employee. She explained that Hill's attendance during the training period was acceptable and that the employer was "pleased with [Hill's] work." Regarding Hill's overall attendance record, the officer manager testified that Hill's "missing work was a major

- 3 -

issue" after the training period. She testified that the office provides three days of paid sick leave per year; however, Hill did not work on May 5 because of her grandfather's funeral, Hill missed work on May 11, Hill was absent for illness on May 15 and 16, Hill was absent on May 18, and Hill left work early on May 12, 17, and 19. The office manager provided a copy of Hill's compensation history to verify Hill's absences. When asked if the employer had plans to fire or discharge Hill, the office manager testified that "no, we were trying to . . . address everything" and that she "had a talk with [Hill]" about her attendance and "personal phone calls" at work. She testified that Hill gave a written resignation and said she would remain until they found a replacement.

Hill later informed the Commission she had not received the notice of hearing and requested that the hearing be reopened. In response to this request, the Commission scheduled a hearing to determine whether to reopen and to hear Hill's testimony. On the day of the hearing, the employer called the Commission to confirm the scheduled hearing and learned that it had the wrong time. The employer did not attend the hearing and sent a letter citing "confusion in [the] office regarding the time of appeal."

Accepting Hill's testimony that she had never received the notice of the earlier hearing, the appeals examiner reopened the hearing and noted the previously submitted exhibits and the recording of the earlier hearing. After Hill and her attorney listened to the tape-recorded testimony of the officer manager from the previous hearing, Hill's attorney objected to the exhibit describing Hill's training period and moved to strike the office manager's testimony because of the inability to cross-examine her. The appeals examiner denied the motions and ruled she would evaluate the office manager's testimony for "whatever it's worth."

Hill testified that she missed four days of work due to personal illness, her grandfather's illness and death, and her mother's illness following the death. Hill also testified that she called

- 4 -

her employer about each absence and that the office manager said "they were going to have to fire [her] because they could not operate like this for business." Hill denied that the office manager talked to her about personal telephone calls at the office.

Hill further testified that she did not tell the claims deputy that the employer "did not talk about firing me" or that the office manager "said the office could not operate under those conditions." She testified that, instead, she told the claims deputy that her employer had discussed firing her, that she believed firing was imminent, and that the only reason she submitted her letter of resignation was to avoid being fired. Hill testified that she offered to work part-time until her replacement was found and that the employer agreed.

The appeals examiner issued a decision containing the following findings of fact:

> The claimant's last, liable employer was B. Sheshadri, MD, where she was employed from February 21, 2000 to May 30, 2000. She performed services as a secretary.
>
> The claimant had been absent from work for one day of personal illness in March and was absent two days in April. She was absent on May 5, 2000 for her grandfather's funeral.
>
> On May 11, 2000 the employer warned the claimant that her absences could not continue or she would be "fired." The claimant did not want to risk being discharged so she submitted a resignation on May 12, 2000. She promised to work until the employer hired her replacement. On May 30, 2000, the employer informed the claimant that her replacement had been hired.
>
> * * * * * * *
>
> The claimant submitted her resignation because she feared the employer was going to discharge her due to attendance. It appears that claimant was simply warned that she was in danger of discharge. This threat of discharge prompted the claimant to resign her employment. It is understandable that the claimant would attempt to avoid a discharge, however, this reason alone does not constitute good cause for leaving work.

The appeals examiner ruled that Hill "is disqualified for benefits . . . because she left work voluntarily without good cause." Hill appealed to the Commission.

- 5 -

At the hearing before the Commission's special examiner, Hill's attorney indicated he did not have any problem with the transcript. Although noting he did not have "any real opportunity to cross-examine the [office manager]," Hill's attorney asserted "I [think] it's sort of harmless here." Following this hearing, the Commission adopted the appeals examiner's findings of fact, with one word substitution ("agreed" instead of "promised" to continue working until replacement) and one addition ("of Norton, Virginia" after the employer's name). The Commission summarized the findings as follows:

> When the claimant first filed her claim for benefits, she indicated that she had voluntarily quit her job after giving her notice and working it out (Exhibit 1). The claimant gave a statement to the Deputy on June 30, 2000 (Exhibit 2) in which she indicated that after turning in her resignation letter she told her employer that she was willing to work past the two weeks until they found someone. She also said in this statement that the employer had not talked about firing her but just stated that the office could not operate under "those conditions." She indicated that she had turned in her resignation because the doctor had gotten "hateful" when she called in on her last day of absence.

> \* \* \* \* \* \* \*

> While the claimant did offer testimony which would seem to indicate that her resignation was submitted only after she was told that she would be fired, the Commission finds that the prior statement she gave concerning her separation which made no mention of such a scenario to substantially undermine the testimony she later gave. The Commission agrees with the Appeals Examiner that the claimant's resignation was submitted in anticipation of rather than in lieu of discharge so that it can still be considered as a voluntary leaving and adjudicated under the provisions of Section 60.2-618(1) of the Code.

> The mere fact that the employer actually told the claimant when her job would end because a replacement had been found would not operate to turn the voluntary nature of her resignation back into a discharge. This is because, as she stated to the Deputy, the claimant had originally given a two week notice but agreed to stay on until such time as that replacement was found. Inasmuch as this was an event which was contemplated by her when she submitted the resignation to begin with, the mere fact that it occurred after the original two weeks had expired does not change

the voluntary nature of her separation. The Commission is further of the opinion that the claimant has not shown that anything her supervisor may have said to her concerning her absences was so demeaning, profane, or abusive as would have prompted an ordinarily prudent person to quit her job without first having found other employment to go to. . . .

Hill appealed this decision for review by the circuit court. The trial judge issued an opinion letter containing his own "findings of fact" and concluded that "Hill voluntarily left work [because] the threat of discharge prompted her to resign employment to avoid being fired and to protect her work record." The Commission appeals from the final order incorporating the trial judge's findings.

III.

As we noted at the outset, "[t]he Commission's findings of fact, if supported by evidence and in the absence of fraud, are made conclusive [by Code § 60.2-625(A)], and the jurisdiction of the circuit courts is confined to questions of law." Virginia Employment Comm'n v. City of Virginia Beach, 222 Va. 728, 734, 284 S.E.2d 595, 598 (1981). In making his own "findings of fact," the trial judge's letter opinion deviated from this well established principle.

(A)

The trial judge made the following findings:

> The first appeal hearing was conducted in the absence of Hill, who did not receive proper notice. The appeal's officer allowed a second hearing at which Hill and her attorney were present. But no live witnesses for employer appeared. Over objection of Hill the appeals officer admitted a tape of the first hearing and a statement by Hill to a deputy.

> The appeals officer and the Commission considered this tape and Hill's statement as evidence, which was unsworn, unclear, ambiguous and not subject to proper cross-examination by Hill's attorney. This was unfair, improper, and inter alia persuades this court to conclude that the Commission's decision is not supported by evidence, especially in view of Hill's unrefuted testimony under oath. She was the only witness at the second hearing.

- 7 -

We have held, however, that "[h]earsay evidence is admissible in [employment commission] proceedings." Baker v. Babcock & Wilcox Co., 11 Va. App. 419, 425, 399 S.E.2d 630, 634 (1990). In addition, we have held "that the 'Record of Facts Obtained by Deputy' [is] a part of the record and the documents contained therein [are] properly considered by both the appeals examiner and the [Commission] in making their findings of fact." Snyder v. Virginia Employment Comm'n, 23 Va. App. 484, 488, 477 S.E.2d 785, 787 (1996). In view of these decisions, we hold that the Commission committed no error in considering the record of facts and Hill's own statement as evidence properly before the Commission.

We further hold that the Commission properly considered the sworn testimony of the office manager. Initially, we note that the testimony was received at a hearing properly scheduled after notice to both parties. Furthermore, Hill did not preserve this issue for review. Although Hill's attorney initially objected to the testimony after the appeals examiner reopened the hearing to consider Hill's testimony, Hill later waived this objection by failing to appeal to the Commission the denial of the opportunity to cross-examine the office manager. When Hill appealed to the Commission from the appeals examiner's opinion, Hill did not assert that this procedure was flawed or a reason to reverse the appeals examiner's decision. Indeed, at the argument on appeal to the Commission, Hill's attorney specifically noted that he had no problem with the transcript and further indicated the record was not an issue, saying the following:

> I was somewhat concerned about the, the attempt to rely on the
> first, first transcript with, you know there wasn't any real
> opportunity to cross-examine the person, but ah, I, I thinks it's sort
> of harmless here. My, my basic ah, argument is laid out in the
> memorandum.

The memorandum in support of Hill's appeal did not raise in any manner the cross-examination issue.

In short, the trial judge's findings that the Commission's record did not include either Hill's statement in the deputy's written "record of facts" or the transcript of the first hearing before the appeals examiner are plainly wrong. Lastly, we note that Hill's petition for review does not specify this issue among the "grounds upon which a review is sought." Code § 60.2-625(A).

(B)

The trial judge's conclusion that "the Commission's findings of fact are not supported by the record" was based upon a misapprehension of the evidence properly before the Commission. The Commission's findings were based upon the evidence recited in Part II of this opinion, including, in pertinent part, the following findings:

> While [Hill] did offer testimony which would seem to indicate that her resignation was submitted only after she was told that she would be fired, the Commission finds that the prior statement she gave concerning her separation which made no mention of such a scenario . . . substantially undermine[s] the testimony she later gave. The Commission agrees with the Appeals Examiner that [Hill's] resignation was submitted in anticipation of rather than in lieu of discharge so that it can still be considered as a voluntary leaving and adjudicated under the provisions of Section 60.2-618(1) of the Code.

We hold that the record supports these findings. We further hold that in view of these findings, the Commission did not err in ruling that Hill left her employment voluntarily. See Virginia Employment Comm'n v. Fitzgerald, 19 Va. App. 491, 496, 452 S.E.2d 692, 695 (1995) (holding that claimant voluntarily and without good cause left employment in order to go to training school, but prior to applying); Shifflett v. Virginia Employment Comm'n, 14 Va. App. 96, 98, 414 S.E.2d 865, 866 (1992) (holding that claimant voluntarily and without good cause left her job when she "refused to work out a notice period, after being informed of a future discharge").

Accordingly, we reverse the trial judge's order, and we affirm the Commission's findings and its decision.

Reversed.